## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Case No. 16-10704 (KG) |
| | ) | |
| Emerald Oil, Inc., *et al.* | ) | Chapter 11 |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |
| | ) | **Re: D.I. 17, 48, 65, 77, 127, 143,** |
| | ) | **145, 148, 149, 152, 157, 161, 162,** |
| | ) | **181, 182, 209, 210, 216, 225, 226,** |
| | ) | **231, and _____** |

### FINAL AGREED ORDER
### AUTHORIZING LIMITED USE OF CASH COLLATERAL, OBTAINING
### POST-PETITION CREDIT SECURED BY SENIOR LIENS, GRANTING ADEQUATE
### PROTECTION TO EXISTING LIENHOLDERS, AND GRANTING RELATED RELIEF

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Granting Liens and Providing Superpriority Administrative Expense Status, (III) Authorizing the Debtors to Use Cash Collateral, (IV) Granting Adequate Protection to the Prepetition Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 17] (the "Financing Motion"), dated March 23, 2016 and filed by the above-captioned debtors, as debtors-in-possession (collectively, the "Debtors"), seeking, *inter alia*, pursuant to Sections 105, 361, 362(d), 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 503(b), and 507 of Title 11 of the United States Code (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Emerald Oil, Inc. (9000); Emerald DB, LLC (2933); Emerald NWB, LLC (7528); Emerald WB LLC (8929); and EOX Marketing, LLC (4887). The location of the Debtors' service address is: 200 Columbine Street, Suite 500, Denver, Colorado 80206.

"Bankruptcy Code"), and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), the following:

(i)　　authority for the Debtors to obtain post-petition loans and other extensions of credit from Wells Fargo Bank, N.A. and a syndicate of financial institutions comprised of certain of the Pre-Petition Lenders (as defined in this Financing Order) (collectively the "Post-Petition Lenders", and together with the Pre-Petition Lenders, collectively the "Lenders") in an amount not to exceed $7,500,000 on an interim basis, and $20,000,000 on a final basis, cumulative of and including any amounts advanced on an interim basis (the "DIP Commitment"), and including, without limitation, principal, other extensions of credit and financial accommodations, interest, fees, expenses, and other costs of the Post-Petition Agent and the Post-Petition Lenders in these bankruptcy cases (collectively, the "Cases") (the DIP Commitment, collectively with such interest, fees, expenses, and other costs referenced above, the "DIP Loan Amount"), in accordance with the terms and conditions set forth in this Financing Order and in that certain Amended and Restated Credit Agreement dated May 1, 2014 (as heretofore amended, the "Credit Agreement"), as amended in connection herewith by the Debtor in Possession Financing Amendment to Amended and Restated Credit Agreement (the "DIP Amendment"), the Credit Agreement and the DIP Amendment (collectively, the "DIP Agreement")[2], and with the other Loan Documents (as defined in the DIP Agreement), and all other related agreements and documents evidencing the DIP Obligations (as defined below) (collectively, the "DIP Facility");

(ii)　　authority for the Debtors to execute, deliver, and perform under the DIP Facility and Loan Documents, and all other related agreements and documents creating, evidencing, or securing indebtedness or obligations of any of the Debtors to Wells Fargo Bank, N.A., as agent for the Post-Petition Lenders (in such capacity, the "Post-Petition Agent") and the Post-Petition Lenders on account of the DIP Facility or granting or perfecting liens or security interests by any of the Debtors in favor of and for the benefit of the Post-Petition Agent, for itself and for and on behalf of the Post-Petition Lenders, on account of the DIP Facility, as same now exists or may hereafter be amended, modified, supplemented, ratified, assumed, extended, renewed, restated, or replaced, and any and all of the agreements and documents currently executed or to be executed in connection therewith or related thereto, by and among any of the Debtors, the Post-Petition Agent, and the Post-Petition Lenders, the terms of which are referenced and incorporated in this Financing Order as if set forth *in haec verba* (collectively, the "DIP Facility Documents");

---

[2] A copy of the DIP Agreement is attached hereto as Exhibit "1", and incorporated in this Financing Order as if set forth *in haec verba*.

(iii)   approval of the terms and conditions of the DIP Facility and the DIP Facility Documents;

(iv)   upon entry of this Financing Order (as defined below), approval of a portion of the Lenders' Pre-Petition Claim (as defined in this Financing Order) equal to four (4) times the DIP Loan Amount being deemed obligations and indebtedness to the Post-Petition Agent and the Post-Petition Lenders under the DIP Facility (all obligations and indebtedness of any of the Debtors to the Post-Petition Agent and the Post-Petition Lenders under the DIP Facility Documents and this Financing Order, collectively, the "DIP Obligations") and secured by the DIP Collateral (as defined below);[3]

(v)   authority for the Debtors to use Cash Collateral (as defined below) of Wells Fargo Bank, N.A., in its capacity as administrative agent (in such capacity, the "Pre-Petition Agent", and together in its capacity as the Post-Petition Agent, the "Agent") for itself and the other senior lenders (collectively, the "Pre-Petition Lenders") under the Credit Agreement (as defined in this Financing Order) in accordance with the terms and conditions set forth in this Financing Order;

(vi)   modification of the automatic stay of Bankruptcy Code § 362 (the "Automatic Stay") to the extent provided in this Financing Order;

(vii)   granting of automatically perfected first priority liens and security interests to the Post-Petition Agent, for itself and on behalf of the Post-Petition Lenders to secure the DIP Obligations in the DIP Collateral, and granting automatically perfected liens, security interests, and other adequate protection to the Pre-Petition Agent, for itself and for and on behalf of the Pre-Petition Lenders with respect to their interests in the DIP Collateral and the Pre-Petition Collateral (as defined below); and

(viii)   authorizing the indefeasible transfer of Cash Collateral to and for the benefit of the Agent, for itself and for and on behalf of the Lenders, as set forth in this Financing Order.

This Court having found that, under the circumstances, due and sufficient notice of the Financing Motion, the record made at the final hearing held on April 26, 2016, the adjourned final hearing held on May 4, 2016, and the adjourned final hearing held on May 6, 2016 (such hearings being, the "Final Hearing") was provided by the Debtors as set forth in Paragraph 4 below; and having held the Final Hearing on May 6, 2016 after considering all the

---

[3] The amount of the Lenders' Pre-Petition Claim which is not made a part of the DIP Obligations is in this Financing Order referred to as the "Lenders' Retained Pre-Petition Claim".

pleadings, motions, and other papers filed with this Court; and as further stated on the record at the interim hearing held on March 24, 2016 to consider the interim relief requested in the Financing Motion (the "Interim Hearing"); and this Court having entered the Interim Financing Order on March 24, 2016 [Docket No. 48]; and upon the record made by the Debtors at the Final Hearing; and the Court having heard and resolved or overruled all objections to the final relief requested in the Financing Motion as further stated on the record at the Final Hearing; and it appearing that approval of the relief requested on a final basis in the Financing Motion is in the best interests of the Debtors, their creditors and their estates; and after due deliberation and consideration and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

1.      The Debtors and the Agent have represented to this Court that they have agreed in good faith to the terms and conditions of the DIP Agreement and this *Final Agreed Order Authorizing Limited Use of Cash Collateral, Obtaining Post-Petition Credit Secured by Senior Liens, Granting Adequate Protection to Existing Lienholders, and Granting Related Relief* (the "Financing Order"). The Debtors and the Agent have represented to the Court that they have negotiated at arm's length, have been represented by counsel, and have acted in good faith in the negotiation and preparation of the DIP Agreement and this Financing Order and intend to be and are bound by their respective terms. The terms and conditions of this Financing Order and the DIP Facility Documents reflect the Debtors' exercise of prudent business judgment and are consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

2.      The Debtors and the Agent have stipulated and agreed as follows, and based upon the pleadings and evidence presented at the interim and final hearings before this

Court, this Court hereby acknowledges such stipulations, and grants the relief in this Financing Order, on a final basis. Therefore, consistent with Bankruptcy Code §§ 361, 362, 363, 364, 503(b), and 507, this Court hereby finds and orders:

## STATEMENT OF JURISDICTION

3.      This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (D), (G), (K), (M) and (O).

## NOTICE

4.      Sufficient and adequate notice of the Financing Motion and the Final Hearing with respect thereto has been given pursuant to the Interim Financing Order (as defined below), Bankruptcy Rules 2002, 4001, 9006, and 9014 and the Local Rules, and as required by Bankruptcy Code §§ 102, 105, 361, 362, 363, and 364. No further notice of, or hearing on, the relief sought in the Financing Motion is necessary.

## FACTUAL AND PROCEDURAL BACKGROUND

5.      On March 22, 2016 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the management and possession of their business and property as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

6.      On March 24, 2016, the Court conducted the interim hearing on the Financing Motion and pronounced interim approval of the Financing Motion as set forth in the *Interim Agreed Order Authorizing Limited Use of Cash Collateral, Obtaining Post-Petition Credit Secured by Senior Liens, Granting Adequate Protection to Existing Lienholders, Scheduling a Final Hearing, and Granting Related Relief* [Docket No. 48] (the "Interim Financing Order")

7.    On May 6, 2016, the Court conducted a final hearing on the Financing Motion and pronounced final approval of the Financing Motion as set forth in this Financing Order.

8.    An official committee of unsecured creditors (the "Creditors' Committee") has been appointed in these Cases.

### The Lenders' Pre-Petition Claims

9.    The Debtors stipulate that, pursuant to the Pre-Petition Claim Documents (as defined below) and applicable law, the Pre-Petition Agent and the Pre-Petition Lenders hold a valid, enforceable, and allowable claim against Emerald Oil, Inc. ("Emerald"), as of the Petition Date, in an aggregate amount equal to at least $111,678,000.00 of unpaid principal, plus any and all other fees, costs, expenses, charges, and other claims, debts or obligations of the Debtors to the Pre-Petition Agent and the Pre-Petition Lenders that have accrued as of the Petition Date under the Pre-Petition Claim Documents and applicable law.[4]  The claim of the Pre-Petition Agent and the Pre-Petition Lenders, as described in the preceding sentence together with all post-Petition Date interest, fees, costs, and charges allowed to the Pre-Petition Agent and the Pre-Petition Lenders on such claim pursuant to Bankruptcy Code § 506(b), shall collectively be referred to hereunder as the "Lenders' Pre-Petition Claim".

10.    The Debtors stipulate that all of Emerald's indebtedness and obligations to the Pre-Petition Agent and the Pre-Petition Lenders, including, without limitation, the Lenders' Pre-Petition Claim, have been unconditionally guaranteed by Emerald WB LLC, Emerald DB LLC, Emerald NWB LLC and EOX Marketing, LLC (collectively, the "Guarantors") pursuant to certain agreements and documents including, without limitation, the Guaranty and Collateral

---

[4] The Debtors' stipulations contained in this Financing Order are subject to the investigation rights set forth in Paragraph 101 in this Financing Order (except as to the Debtors).

Agreement dated November 20, 2012, as amended by the First Amendment to Guaranty and Collateral Agreement dated May 1, 2014, as further set forth therein.

11.    The Debtors stipulate that the Lenders' Pre-Petition Claim (including, without limitation, the Lenders' Retained Pre-Petition Claim) constitutes an allowed, legal, valid, binding, enforceable, and non-avoidable obligation of and claim against the Debtors, and shall not be subject to any offset, defense, counterclaim, avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or any other applicable law, and that the Debtors, their estates, and Creditors' Committee, subject to Paragraph 101, do not possess and shall not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, allowance, and non-avoidability of the Lenders' Pre-Petition Claim.

12.    The Debtors stipulate that the Lenders' Retained Pre-Petition Claim shall remain as an allowed, legal, valid, binding, enforceable, and non-avoidable obligation of and claim against the Debtors, and shall not be subject to any offset, defense, counterclaim, avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or any other applicable law, and that the Debtors, their estates, and Creditors' Committee, subject to Paragraph 101, do not possess and shall not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, allowance, and non-avoidability of the Lenders' Retained Pre-Petition Claim.

### The Pre-Petition Claim Documents

13.    The Debtors stipulate that the Lenders' Pre-Petition Claim is evidenced by certain documents executed and delivered to the Pre-Petition Agent and the Pre-Petition Lenders by the Debtors, including, without limitation, the Credit Agreement and the documents listed on Exhibit "3" hereto.

14.     The Credit Agreement, and all notes, security agreements, assignments, pledges, mortgages, deeds of trust, guaranties, forbearance agreements, letters of credit, swap agreements (including, without limitation, that certain ISDA 2002 Master Agreement dated as of June 20, 2014 and executed by and between the Bank of Nova Scotia (the "Secured Swap Provider") and Emerald Oil, Inc.) and other instruments or documents executed in connection therewith or related thereto shall be referred to in this Financing Order collectively as the "Pre-Petition Claim Documents." True and correct copies of certain of the Pre-Petition Claim Documents are retained by the Debtors and will be made available to interested parties upon request.

15.     The Debtors stipulate that the Pre-Petition Claim Documents are genuine, valid, existing, legally enforceable and admissible in the Cases for all purposes.

### The Pre-Petition Collateral

16.     Subject only to Prior Liens (as defined below) (if any), the Debtors stipulate that the Lenders' Pre-Petition Claim evidenced by the Pre-Petition Claim Documents is secured by perfected first priority liens and security interests in, *inter alia*, all of the real and/or personal property now owned or at any time hereafter acquired by any of the Debtors or in which any such Debtor now has or at any time in the future may acquire any right, title or interest and whether now existing or hereafter coming into existence covered by those certain mortgages, collateral and pledge agreements forming a component of the Security Instruments, as defined in the Pre-Petition Claim Documents (collectively, the "Lenders' Pre-Petition Collateral"), including, without limitation, (1) all presently owned or after acquired real property, fixtures and improvements thereon, leases of real property, oil and gas properties and as-extracted collateral, in each case, covered by those certain mortgages forming a component of the Security Instruments, as defined in the Pre-Petition Claim Documents, and (2) the following presently-

owned and after-acquired personal property:  (a) accounts, (b) chattel paper (both tangible and electronic), (c) commercial tort claims, (d) commodity accounts, (e) deposit accounts (other than payroll, withholding tax, and other fiduciary deposit accounts), (f) securities accounts, (g) documents, (h) general intangibles (including, without limitation, rights in and under any swap agreements), (i) goods (including, without limitation, all inventory and equipment), (j) instruments, (k) investment property, (l) letters of credit rights (whether or not the letter of credit is evidenced by a writing), (m) pledged securities, (n) supporting obligations, and (o) to the extent not otherwise included, any other property insofar as it consists of personal property of any kind or character defined in and subject to the UCC (as defined below), (3) all books and records pertaining to the Lenders' Pre-Petition Collateral, and (4) to the extent not otherwise included, all proceeds and products of any and all of the foregoing and all collateral security, income, royalties and other payments now or hereafter due and payable with respect to, and guarantees and supporting obligations relating to, any and all of the Lenders' Pre-Petition Collateral and, to the extent not otherwise included, all payments of insurance (whether or not the Pre-Petition Agent is the loss payee thereof), or any indemnity, warranty or guaranty, payable by reason of loss or damage to or otherwise with respect to any of the foregoing Lenders' Pre-Petition Collateral, all other claims, including, without limitation, all cash, guarantees and other supporting obligations given with respect to any of the foregoing; provided that, notwithstanding anything to the contrary in this Financing Order, the Lenders' Pre-Petition Collateral shall not include the Avoidance Claims Proceeds (as defined below) or any proceeds thereof.  The Lenders' liens and security interests in the Lenders' Pre-Petition Collateral were granted pursuant to, *inter alia*, the Pre-Petition Claim Documents.

17.    The Debtors stipulate that the Pre-Petition Agent and the Pre-Petition Lenders have properly perfected their first priority liens and security interests and other liens in the applicable Pre-Petition Collateral (subject to Prior Liens (if any) and liens and security interests securing the DIP Facility and DIP Obligations as granted in the Interim Financing Order and this Financing Order) as evidenced by, among other things, the Pre-Petition Claim Documents, documents held in possession of the Pre-Petition Agent and the Pre-Petition Lenders, and documents filed with the appropriate state, county, and other offices.

### Defaults by the Debtors

18.    The Debtors stipulate that they are in default of their debts and obligations to the Pre-Petition Agent and the Pre-Petition Lenders under the terms and provisions of the Pre-Petition Claim Documents.  The Debtors stipulate that these defaults exist, have not been timely cured, and are continuing.  The Debtors stipulate that the filing of these Cases has accelerated the Lenders' Pre-Petition Claim for all purposes in these Cases and in connection with the Pre-Petition Agent's and the Pre-Petition Lenders' enforcement of their rights and remedies under the Pre-Petition Claim Documents and applicable law.  The Lenders' Pre-Petition Claim remains due and owing.

### CASH COLLATERAL

### Lenders' Cash Collateral

19.    The Debtors stipulate that all cash of each of the Debtors' bankruptcy estates, wherever located, and all cash equivalents, whether in the form of negotiable instruments, documents of title, securities, deposit accounts, investment accounts, or in any other form, that were on the Petition Date in any of the Debtors' possession, custody or control (or persons in privity with any of the Debtors), or in which any of the Debtors will obtain an interest during the pendency of these Cases whether via advances under the DIP Facility or otherwise, or

which represent income, proceeds, products, rents, or profits of any of the Collateral (as defined below) shall constitute the cash collateral of the Agent, for itself and for and on behalf of the Lenders (collectively, the "Cash Collateral"). The Debtors stipulate that the Pre-Petition Agent and the Pre-Petition Lenders have, subject to any DIP Facility to the extent provided in this Financing Order, first priority perfected liens and security interests in the Cash Collateral pursuant to the applicable provisions of the Pre-Petition Claim Documents, Bankruptcy Code §§ 363(a) and 552(b), the Interim Financing Order, this Financing Order, and the "equities of the case" exception of Bankruptcy Code § 552(b) shall not apply.

20.     Each Debtor shall segregate and account to the Agent and the Lenders for all Cash Collateral that they now possess, that they have permitted to be transferred into the possession of others (if any), that is being held by those in privity with the Debtors, or that any Debtor might hereafter obtain or have any interest in. Each Debtor shall account to the Agent and the Lenders for the receipt and use, if any, of the Cash Collateral received by the Debtors since the Petition Date and prior to the entry of this Financing Order. Absent a further order of this Court or the consent of the Agent and the Lenders, the Debtors are strictly prohibited from using the Cash Collateral except as expressly provided for in this Financing Order.

### Need For and Consent to Limited Use of Cash Collateral

21.     The Lenders do not consent to the Debtors' use of Cash Collateral except in strict accordance with the terms and conditions contained in this Financing Order. The relief hereunder is necessary to avoid immediate and irreparable harm to the Debtors' estates because, without the use of Cash Collateral, the Debtors will not have the funds necessary to maintain their assets, sell or otherwise liquidate their assets, provide financial information, and pay employee compensation, payroll taxes, overhead, and other expenses necessary to maximize the

value of the Debtors' estates.  The Debtors require the use of Cash Collateral as provided in this Financing Order.

22.    Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested in this Financing Order.  The use of Cash Collateral will benefit the Debtors and their estates.  The ability of the Debtors to maximize the value of their estates depends upon the Debtors' ability to use the Cash Collateral of the Agent and the Lenders. Accordingly, the use of Cash Collateral by the Debtors is actual and necessary to preserving their estates.

### Authorization for Limited Use of Cash Collateral

23.    The Debtors are hereby authorized, on a limited basis, to use Cash Collateral only in strict accordance with the terms and conditions provided in this Financing Order.

### DIP FACILITY

### Need for DIP Facility

24.    Without the use of Cash Collateral and the DIP Facility, the Debtors will not have the funds necessary to maintain their assets, operate their businesses, sell or otherwise liquidate their assets, provide financial information, or pay employee compensation, payroll taxes, overhead, and other expenses necessary to maximize the value of the Debtors' estates. The use of the Cash Collateral and obtaining the DIP Facility is actual and necessary to preserving the Debtors and their estates.  The Post-Petition Agent and the Post-Petition Lenders are willing to provide the DIP Facility to or for the benefit of the Debtors only in accordance with the terms of the DIP Agreement and this Financing Order.

25.    The Debtors have requested that the Post-Petition Agent and the Post-Petition Lenders permit use of Cash Collateral and the DIP Facility in order to provide funds to

be used for the purposes set forth in the Budget (as defined below), and such other purposes as permitted by this Financing Order and to which the Post-Petition Agent, for itself and on behalf of the Post-Petition Lenders consents in writing.

26.    The Debtors have sought to obtain financing from other sources and are unable to obtain credit allowable under Bankruptcy Code § 503(b)(1), or pursuant to Bankruptcy Code §§ 364(a) and (b), on terms more favorable to the Debtors than the terms of the DIP Facility.

27.    The terms of the DIP Facility and this Financing Order, including, without limitation, the related fees and priming liens granted in accordance therewith and the approval of a portion of the Lenders' Pre-Petition Claim becoming DIP Obligations as provided in this Financing Order, are fair, just, and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  Any credit extended under the terms of this Financing Order and the DIP Facility shall be deemed to have been extended in good faith by the Post-Petition Agent and the Post-Petition Lenders, as the term "good faith" is used in Bankruptcy Code § 364(e).

### Authorization to Obtain Credit

28.    The Debtors are hereby authorized to obtain credit only in accordance with the DIP Agreement, the DIP Facility, this Financing Order and the Budget.

29.    The Debtors are hereby authorized to obtain new post-petition credit in an amount not to exceed $20,000,000 (excluding the portion of the Lenders' Pre-Petition Claim that is being deemed to be part of the DIP Obligations hereunder) on a final basis pursuant to the terms of this Financing Order and the terms of the DIP Agreement, solely for the purposes set

forth in the Budget or as otherwise provided in the DIP Agreement. Amounts borrowed and repaid under the DIP Facility may be reborrowed. Unless otherwise agreed, no borrowing shall be made more frequently than once per week.

30.    In addition to the DIP Loan Amount, a portion of the Lenders' Pre-Petition Claim, in an amount equal to four (4) times the DIP Loan Amount, shall and does hereby constitute DIP Obligations in all respects, and shall be secured by the Collateral and afforded all priorities and protections afforded to the DIP Obligations under this Financing Order and the DIP Facility Documents.

31.    The Debtors are authorized to execute, deliver, and perform under the DIP Facility Documents on the terms therein, including, without limitation, the fees, indemnification provisions (including, without limitation, the indemnification provisions of the DIP Agreement), priming lien provisions, and the Lenders' Pre-Petition Claim becoming DIP Obligations. The Debtors, the Agent, and the Post-Petition Lenders stipulate that the DIP Facility Documents are valid and binding.

### Financing Liens and Superpriority Administrative Claims

32.    Effective as of the Petition Date, the Post-Petition Agent, for itself and for and on behalf of the Post-Petition Lenders, is entitled to and is hereby granted first priority claims, liens and security interests on any property not subject to a lien, junior liens on property subject to a Prior Lien, and priming liens and security interests in the Collateral (as defined below), and the protections of good faith credit providers to the fullest extent under Bankruptcy Code §§ 364(c)(1), (c)(2), and (c)(3), 364(d)(1), and 364(e), and thus such claims, liens, and security interests are hereby granted (a) pursuant to Bankruptcy Code § 364(c)(1), superpriority claim with priority over all other administrative claims against the Debtors' estates, including, without limitation, Bankruptcy Code §§ 105, 326, 327, 328, 330, 331, 503(b), 507(b), 1113, and

1114, (b) pursuant to Bankruptcy Code § 364(c)(2), a first priority lien on and security interest in Collateral that is not subject to any lien or security interest, if any, (c) pursuant to Bankruptcy Code § 364(c)(3), a junior lien on and security interest in Collateral that is subject to Prior Liens, if any; and (d) pursuant to Bankruptcy Code § 364(d)(1), a first priority priming lien on and security interest in the Collateral, subject only to the Prior Liens, if any, and all of which claims, liens, and security interests granted in (a) through (d) of this paragraph shall secure the DIP Facility and DIP Obligations (including, without limitation, principal and any other extensions of credit, interest, fees, expenses, and any fees and expenses of the Post-Petition Agent and the Post-Petition Lenders in these Cases, however incurred, senior to all other liens, encumbrances, and security interests, including, without limitation, adequate protection and replacement liens granted pursuant to the terms of this Financing Order, but subject only to Prior Liens and the Carve Out (as defined below). Each of the Debtors shall be jointly and severally liable for the DIP Facility and the DIP Obligations, and the performance of all obligations under the terms of the DIP Agreement, this Financing Order, and the DIP Facility Documents, and shall grant the above-mentioned liens as security for the same.

33.    All liens and security interests granted hereby and under the DIP Facility Documents securing the DIP Facility and DIP Obligations, including the first priority and priming liens and security interests, are effective as of the Petition Date and are valid and automatically perfected first priority priming liens and security interests, subject only to Prior Liens (if any) and the Carve Out, in and upon, and hereby are granted in and attach to, any and all assets and properties of the Debtors and the Debtors' bankruptcy estates, wherever located, including property subject to avoided liens, now owned or after acquired, real and personal, tangible and intangible, and all proceeds, substitutions, products, rents, or profits thereof, and for

further description only without limitation, shall include any and all assets of the Debtors of the types described in the Pre-Petition Claim Documents, but not be limited to the Pre-Petition Collateral, including: (1) the following presently-owned and after-acquired personal property: (a) accounts, (b) accessions, (c) chattel paper (both tangible and electronic), (d) commercial tort claims, (e) commodity accounts, (f) commodity contracts, (g) deposit accounts, (h) documents, (i) equipment, (j) financial assets, (k) fixtures, (l) general intangibles, (m) goods, (n) intellectual property, (o) instruments, (p) inventory, (q) investment property, (r) letters of credit, (s) letters of credit rights, (t) payment intangibles, (u) permits, (v) timber, (w) as-extracted collateral, (x) notes, (y) promissory notes, (z) securities (certificated and uncertificated), (aa) securities accounts, (ab) securities entitlements, (ac) software, (ad) supporting obligations, (ae) collateral records, (af) insurance, (ag) causes of action, (ah) proceeds from any causes of action under the Bankruptcy Code, including, without limitation, §§ 544, 547, and 548 ("Avoidance Claims Proceeds"), and (ai) money (as each such term may be defined in the New York Uniform Commercial Code as of the date hereof (the "UCC")), (2) all presently owned or after acquired real property and improvements thereon and leases of real property, and (3) all presently owned or after acquired interests in Oil and Gas Properties, as defined in the Credit Agreement, wherever located and irrespective to whether such Oil and Gas Properties are part of the Lenders' Pre-Petition Collateral (collectively, the "DIP Collateral," and together with the Pre-Petition Collateral and the Cash Collateral, the "Collateral"); the Collateral shall secure all obligations under the DIP Facility and this Financing Order as set forth in the DIP Facility Documents and this Financing Order, provided that, with respect to Avoidance Claims Proceeds, the liens granted in paragraph 32 shall and do hereby secure DIP Obligations, in an amount equal to the DIP Loan Amount, and deemed applied as to the last to be paid portion of the DIP

Obligations irrespective of the when such DIP Obligations may be paid from the Avoidance Claims Proceeds (to the extent the Avoidance Claims Proceeds are received prior to the satisfaction of the DIP Obligations).

### Cash Collateral Accounts

34.     The Debtors shall immediately, and shall continue to, segregate, remit, and deposit all Cash Collateral in each of the Debtors' accounts, possession, custody or control and which any of the Debtors may receive in the future, in accordance with the applicable cash management orders entered by this Court and as permitted by the DIP Agreement.  The bank accounts of each of the Debtors shall be only with the Agent in the name of the Debtors (individually or collectively, the "Cash Collateral Accounts"), and the Post-Petition Agent, for itself and for and on behalf of the Post-Petition Lenders, shall have full dominion and control over each such account. Absent written consent from the Post-Petition Agent and the Post-Petition Lenders otherwise, the Debtors will close all accounts that are not maintained with the Agent.

35.     The Debtors shall be prohibited from withdrawing funds from the Cash Collateral Accounts, except in strict compliance with the terms of this Financing Order and the DIP Facility.

36.     Each of the Debtor's Banks (as defined below) is authorized to debit the applicable Debtor's accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks drawn on the Debtor's accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in one of Debtor's accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such

items prior to the Petition Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System; and that any of the Debtor's Banks may rely on the representations of such Debtor with respect to whether any check or other payment order drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to this or any other order of this Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtor as provided for in this Financing Order; and that (i) that those certain existing deposit agreements between the Debtors and their existing depository and disbursement banks (collectively, the "Banks") shall continue to govern the postpetition cash management relationship between the Debtors and the Banks, and that all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect, (ii) the Debtors and the Banks may, without further Order of this Court, agree to and implement changes to the cash management systems and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts.[5]

37.     To the extent there exists or comes to exist any cash of the Debtors' estates that is not Cash Collateral, wherever located and however held, such cash shall be deemed to have been used first by the Debtors' estates and such cash, to the extent applicable, shall be subject to the liens and security interests granted to the Agent and the Lenders hereunder.

---

[5] This paragraph is intended to be consistent with the cash management order in these cases, to the extent of any inconsistency, this paragraph shall control.

## ADEQUATE PROTECTION OF THE LENDERS

### Budgeted Cash Collateral Usage

38.    As adequate protection of the Lenders' interest in the Collateral and for

the Debtors' use of Cash Collateral and only so long as an Event of Default (as defined below)

shall not have occurred and continue to exist after the Default Notice Period (as defined below),

the Debtors are authorized to and shall use the Cash Collateral (including, without limitation, the

advances under the DIP Facility) strictly in accordance with the 13-week budget attached hereto

as Exhibit "2" (the "Budget"), subject to a permitted negative variance (i) of 10% per week

above the projected Total Operating Disbursements set forth in the Budget, (ii) of 10% per week,

on a by-line-item basis, above the projected amounts set forth in the Budget for the line-items in

the Budget labeled "Accounts Payable – Critical", "Salaries & Benefits", "Rent & Utilities",

"Professional Fees" (provided that, for the avoidance of doubt, "Professional Fees" will not

include any fees attributable to the Agent's or Lenders' professionals[6]), and "Other", and (iii) of

10% per four-week period, then ending, on the actual production volume of crude oil set forth in

the Budget.  Any unused amounts in the Budget during any one-week period may be carried

forward to future weekly periods and applied to any amount by which that same line-item, and

only that same line-item, exceeds its projected use as set forth in the Budget, such that the

cumulative-to-date budgeted amount for each line item is available without causing such future

weekly periods to exceed the allowable variance, provided that if a line item amount is

determined not to have been required, then such carry forward shall not apply.  Unless otherwise

agreed, no advances under the DIP Facility shall be made more frequently than once per week.

Prior to any transfer or use of Cash Collateral by the Debtors, the Debtors' Chief Restructuring

---

[6] Any variance analysis shall take into account that the Agent's or Lenders' professional fees are not included in the "Professional Fees" line-item.

Officer shall review and verify the proposed transfer or use of Cash Collateral for strict compliance with the Budget and the DIP Agreement.

39.     The Lenders' consent to use of Cash Collateral and agreement to extend credit extends only to (i) amounts due under the DIP Facility and (ii) amounts actually incurred in accordance with the Budget.  Upon the occurrence of an Event of Default that continues to exist after the Default Notice Period (as defined below), the Lenders' consent to use of Cash Collateral or agreement to extend credit shall automatically and immediately terminate and any consent for use of Cash Collateral or agreement to extend credit to satisfy projected, budgeted expenditures shall be immediately terminated and deemed withdrawn unless such Event of Default is waived by the Agent, for itself and for and on behalf of the Lenders, in its sole and absolute discretion.

40.     Absent the prior written consent of the Agent, except as may specifically be provided in the Budget including, without limitation, for ordinary course payroll, benefits, and expense reimbursements, the Debtors agree that no transfer of Cash Collateral shall be made to any of the Debtors' insiders, as that term is defined in Bankruptcy Code § 101.  Any transfers to insiders shall be so identified in the Budget.

41.     The Budget may be modified in writing only with the prior written consent of the Agent and Majority Post-Petition Lenders (as defined in the DIP Agreement); *provided* that any modifications to the Budget shall be provided to the Creditors' Committee. The Budget shall be revised on a monthly basis subject to the consent of the Agent and the Majority Post-Petition Lenders, such consent to be deemed given if no objection is received within five business days.

**Replacement and Adequate Protection Liens; Superpriority Administrative Claims**

42.     Taking into account all factors in these Cases, as adequate protection of the Pre-Petition Agent's and Pre-Petition Lenders' interests in the Collateral and for the Debtors' use of Cash Collateral, and subject only to Prior Liens, if any, the Carve Out, and the Post-Petition Agent and the Post-Petition Lenders' liens and security interests securing the DIP Facility and DIP Obligations, the Pre-Petition Agent and Pre-Petition Lenders are hereby granted, effective as of the Petition Date, valid and automatically perfected first priority replacement liens and security interests in and upon the Collateral to secure any diminution in value of the Post-Petition Agent's and the Post-Petition Lenders', and the Pre-Petition Agent's and the Pre-Petition Lenders' interests in the Collateral from and after the Petition Date.

43.     To the extent any adequate protection is insufficient to adequately protect the Pre-Petition Agent and the Pre-Petition Lenders' interest in the Collateral, the Pre-Petition Agent and the Pre-Petition Lenders are hereby granted superpriority administrative claims and all of the other benefits and protections allowable under Bankruptcy Code § 507(b), junior only in right to any superpriority administrative claims granted to the Post-Petition Agent and the Post-Petition Lenders on account of the DIP Facility and DIP Obligations and the Carve Out.

### Automatic Perfection

44.     This Financing Order shall be sufficient and conclusive evidence of the priority, perfection, attachment, and validity of all of the Agent's and the Lenders' security interests in and liens on the DIP Collateral granted and created in the Interim Financing Order and hereunder, and such security interests and liens shall constitute valid, automatically perfected and unavoidable security interests and liens, with the priorities granted in the Interim Financing Order and hereunder, effective as of the Petition Date, without the necessity of creating, filing, recording, or serving any financing statements, mortgages, or other documents that might

otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to the Agent, for itself and for and on behalf of the Lenders, by the Interim Financing Order or this Financing Order.

45.    To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the Agent's and the Lenders' liens and security interests granted and created by the Interim Financing Order or this Financing Order or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of the United States Bankruptcy Court.

46.    By virtue of the terms of this Financing Order, to the extent that the Agent has filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Debtors, such filings shall be deemed to properly perfect its liens and security interests granted under the Interim Financing Order and this Financing Order without further action by the Agent or by any of the Lenders.

47.    If the Agent shall, in its sole and absolute discretion, elect for any reason to file any Uniform Commercial Code financing statements, mortgages, deeds of trust, or other recordable documents to further evidence perfection of its interests in property of the estates, Agent, or, upon the request of Agent, the Debtors, are authorized and directed to execute, or cause to be executed, all such mortgages, deeds of trust, or other documents, and the filing, recording, or service (as the case may be) of such financing statements, mortgages, deeds of trust, or similar documents shall be deemed to have been made at the time of and on the Petition Date, and the signature(s) of any person(s) designated by the Debtors, whether by letter to the

Agent or by appearing on any one or more of the agreements or other documents respecting the security interests and liens of the Agent, for itself and for and on behalf of the Lenders, granted hereunder shall bind the Debtors and their estates. The Agent may, in its sole and absolute discretion, execute such documents on behalf of the Debtors as the Debtors' attorney-in-fact, or file a certified copy of this Financing Order in any filing or recording office in any county or other jurisdiction in which any of the Debtors have real or personal property, and, in such event, the subject filing or recording officer is authorized and directed to file or record such documents or certified copy of this Financing Order.

### Authorization to Act

48. The Debtors are hereby authorized and directed to perform all acts, take any action, and execute and comply with the terms of such other documents, instruments and agreements, as the Agent may require as evidence of and for the protection of the Collateral, or that may be otherwise deemed necessary by the Agent to effectuate the terms and conditions of this Financing Order and the DIP Facility.

49. Until such time as the Lenders' Pre-Petition Claim and the DIP Obligations shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Pre-Petition Claim Documents and the DIP Facility Documents, and without further order of the Court: (a) the Debtors shall use the DIP Facility proceeds and all Cash Collateral strictly in accordance with the terms of the Budget requirements and the other terms of this Financing Order; (b) the Debtors shall not, without prior order from the Court (after notice to the Agent), engage in any transaction that is not in the ordinary course of the Debtors' business, and (c) the Debtors shall timely comply with all of the covenants set forth in the DIP Facility Documents.

**Prior Liens**

50.     The security interests and liens of the Lenders granted pursuant to the terms of this Financing Order are subject to (a) any other valid, perfected and unavoidable liens and security interests of any other secured creditor in any assets of any of the Debtors existing on the Petition Date, or (b) valid and unavoidable liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, in each case that are senior in priority under applicable law to the Pre-Petition Agent's and the Pre-Petition Lenders' liens and security interests granted under the Pre-Petition Claim Documents in the Pre-Petition Collateral, and the liens and security interests securing the Lenders' Retained Pre-Petition Claim (collectively, the "Prior Liens"). The Debtors and the Agent, on behalf of itself and the Lenders, shall have the right to object to the validity, priority, or extent of any such Prior Liens, or the allowance of any claims secured thereby, or to institute any actions or adversary proceedings with respect thereto. The post-petition security interests and liens granted to the Agent and the Lenders pursuant to the Interim Financing Order and this Financing Order shall not at any time be (a) made subject or subordinated to, or made pari passu with, any other lien or security interest existing on the Petition Date, or any claim, lien, or security interest created under Bankruptcy Code §§ 363 or 364(d) or otherwise (except with respect to any Prior Liens), or (b) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code § 551.

51.     Oasis Petroleum North America LLC, Core Services, Inc., Stellar Field Services, Inc., Power Service, Inc., Cache Trucking LLC, Three Bros. Trucking LLC, Liberty Oilfield Service, LLC, Jacam Chemicals 2013, LLC, FMC Technologies Completion Services, Inc., and PanMeridian Tubular, Koch Exploration Company, MLU Services, Inc. d/b/a General Logistics, Select Energy Service, LLC, IronGate Energy Services, LLC, Enventure Global

Technology, Inc., Cameron International Corporation, and each of their respective subsidiaries and affiliates to the extent a subsidiary or affiliate is a lien claimant (each, a "Lien Claimant", collectively, the "Lien Claimants") have each asserted in these cases as of the Petition Date certain claims (as to each, the "LC Claims"), and certain liens (the "LC Liens") which each hereby asserts are either (i) Prior Liens, or (ii) liens of junior priority to the liens and security interests of the Pre-Petition Agent in the Lenders' Pre-Petition Collateral (the "LC Junior Liens").  Solely to the extent that the value of the Lenders' Pre-Petition Collateral as of the Petition Date exceeds the amount of the Lenders' Pre-Petition Claims as of the Petition Date, the Lien Claimants shall be granted, as adequate protection of the LC Junior Liens pursuant to sections 361 and 363 of the Bankruptcy Code, effective as of the Petition Date and subject to the reservation of rights below, valid and automatically perfected replacement liens and security interests in the Collateral (other than avoidance actions under sections 544, 545, 547, 548, 550 and 553, and proceeds thereof), subject only to the Pre-Petition Agent's and Prepetition Lenders' replacement liens and security interests; *provided* that to the extent any such adequate protection is insufficient to adequately protect the Lien Claimants' interest in property of the Debtors' estates, the Lien Claimants shall have superpriority administrative expense claims under Bankruptcy Code § 507(b) (the "Lien Claimants' Administrative Claims"), superior to all other administrative claims of any kind or nature whatsoever, provided however, that such Lien Claimants' Administrative Claims shall be junior only in right to any superpriority administrative claims granted to the Agent and the Lenders on account of the Pre-Petition Agent and Prepetition Lenders' replacement liens and security interests, the DIP Facility, DIP Obligations, and the Carve Out, and any such adequate protection or administrative claims shall be allocated among the Lien Claimants as determined by the Court; *provided, further,* that the rights of any party

(including the Debtors and the Agent on behalf of the Lenders) to challenge and litigate the LC Claims and the LC Liens on any basis, including the extent, validity, priority, perfection, any value of the LC Liens, or any need, if any, for adequate protection of the LC Liens, are fully preserved (the "LC Challenge"); *provided, further*, that, subject to the stipulation above, any rights of the Lien Claimants with regard to the LC Claims and the LC Liens to defend any LC Challenge are fully preserved solely for the benefit of the Lien Claimants.  The Lien Claimants' rights to assert setoff or recoupment, and the rights of any party (including the Debtors and the Agent on behalf of the Lenders) to challenge such asserted setoff or recoupment rights, are fully preserved.

## No Additional Liens

52.    Until such time as the Lenders' Pre-Petition Claim and the DIP Obligations shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Pre-Petition Claim Documents and the DIP Facility Documents, the Debtors shall not be authorized to obtain credit secured by a lien or security interest in the Pre-Petition Collateral, the Cash Collateral, or the DIP Collateral, other than the DIP Facility, without the prior written consent of the Agent, for itself and for and on behalf of the Lenders, or order of the Court upon reasonable notice.

## No Liability

53.    From and after the Petition Date, no act committed or action taken by the Agent, for itself and for and on behalf of the Lenders under this Financing Order, or the collection of the Lenders' Pre-Petition Claim, or the DIP Facility, shall be used, construed, or deemed to hold the Agent and/or the Lenders to be in "control" of or participating in the governance, management, or operations of any of the Debtors for any purpose, without limitation, or to be acting as a "responsible person(s)" or "owner(s) or operator(s)" or a person(s)

in "control" with respect to the governance, management, or operation of any of the Debtors or their respective businesses (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, Comprehensive Environmental Response, Compensation and Liability Act, or the Bankruptcy Code, each as may be amended from time to time, or any other federal or state statute, at law, in equity, or otherwise) by virtue of the interests, rights, and remedies granted to or conferred upon the Agent and the Lenders under the Pre-Petition Claim Documents, the DIP Facility Documents, the Interim Financing Order, or this Financing Order including, without limitation, such rights and remedies as may be exercisable by the Agent and the Lenders in connection with this Financing Order.

### Automatic Stay

54.     The Automatic Stay is hereby vacated and modified to the extent necessary to permit (a) the Debtors, the Agent, and the Lenders to commit all acts and take all actions necessary to implement the DIP Facility and this Financing Order, (b) all acts, actions, and transfers contemplated in this Financing Order, including, without limitation, transfers of Cash Collateral and other funds to Agent, for itself and for and on behalf of the Lenders, by the Debtors as provided in this Financing Order, and (c) consistent with the terms of this Financing Order, to permit the Agent and/or the Lenders, at their option, to pursue their rights and remedies as to the Collateral in accordance with the Pre-Petition Claim Documents, the DIP Facility Documents, and applicable law.

### Collateral Insurance, Maintenance, Taxes, and Deposits

55.     The Debtors shall maintain, with financially sound and reputable insurance companies, insurance of the kind covering the Collateral, and in accordance with the Pre-Petition Claim Documents and the DIP Facility Documents (covering such risks in amounts as shall be satisfactory to the Agent and shall name the Agent, for itself and for and on behalf of

the Lenders, as loss payee thereunder), including, without limitation, insurance covering the Collateral and such other collateral of the Lenders, if any, as the Agent may from time to time request; and, at the Agent's request, the Debtors shall deliver to the Agent evidence of the maintenance of such insurance.

56.    Upon receipt of notification (written or oral) that an insurance policy covering any Collateral will not be renewed by the respective carrier, the Debtors will promptly notify the Agent in writing of such occurrence and thereafter provide the Agent with the status of all negotiations, if any, regarding such policy on a weekly basis.

57.    To the extent permitted by the Budget, the Debtors shall make any and all payments necessary to keep the Collateral and their other property in good repair and condition and not permit or commit any waste thereof.  The Debtors shall exercise their business judgment and, in so doing shall preserve, maintain, and continue all material leases, patents, licenses, privileges, franchises, certificates and the like necessary for the operation of their businesses.

58.    To the extent the Debtors have made or make any deposits for the benefit of utility companies or any other entity (and the Debtors shall not make any such deposits which are not included in the Budget without first obtaining prior written consent of the Agent), such deposits shall be, and hereby are, upon any return of same to the Debtors, subject to the first priority perfected liens and security interests of the Agent in respect of the DIP Facility and DIP Obligations and the Debtors' use of Cash Collateral granted by this Financing Order.

### Reporting Requirements

59.    The Debtors are authorized and directed to provide to the Agent and the Creditors' Committee all of the documentation and reports required under the DIP Agreement and the other DIP Facility Documents, including, without limitation, the reports required by the DIP Agreement, schedules, assignments, financial statements, insurance policies, and

endorsements, unless the Agent waives or modifies such requirements in writing (the "Reporting Information").

60.    The Reporting Information shall also include: (a) weekly reports of receipts and budgeted cash usage; (b) copies of all reports filed with the Office of the United States Trustee within 2 days after such filing; and (c) such additional financial or other information concerning the acts, conduct, property, assets, liabilities, operations, financial condition, and transactions of any of the Debtors, or concerning any matter that may affect the administration of any of the Debtors' estates, as the Agent may from time to time reasonably request.  All Reporting Information shall be in accordance with accounting principles and bookkeeping practices consistently applied with past accounting principles and bookkeeping practices and reporting of the Debtors to the Agent.

61.    The Debtors shall promptly deliver to the Agent any and all material documentation that in any way relates to a solicitation, offer, or proposed sale or disposition of a material amount of property of any of the Debtors' estates, including, without limitation, letters of inquiry, solicitations, letters of intent, or asset purchase agreements.

62.    The Agent, and its representatives, agents, consultants and other professionals, shall be permitted, in coordination with Debtors' counsel, to contact and communicate with the Debtors and their financial and sale advisors regarding potential transactions for the sale or other disposition of assets of any of the Debtors' estates. The Debtors shall be responsive and employ their reasonable best efforts to cooperate in the coordination of all such contacts and communications, including, without limitation, by conducting update telephone conferences with the Debtors, their financial and sale advisors, and the Agent and the Lenders upon request regarding any potential transactions for the sale or other disposition of the

assets of any of the Debtors' estates.  In the event the Debtors are not reasonably responsive and/or do not employ their reasonable best efforts to cooperate in the coordination of all such contacts and communications, then, upon notice of same by the Agent to the Debtors, the Debtors consent to an expedited hearing upon the Agent's motion in which the Agent, on behalf of its representatives, agents, consultants and other professionals, may seek to be permitted to conduct such contacts and communications without the Debtors' consent.

63.    The Agent, and its representatives, agents and advisors, shall have full access, upon reasonable notice during normal business hours, to the Debtors' business records, business premises, and to the Collateral to enable the Agent or its representatives, agents and advisors to (a) review, appraise, and evaluate the physical condition of the Collateral, (b) inspect and review the financial records and all other records of the Debtors concerning the operation of the Debtors' businesses, and (c) evaluate the Debtors' overall financial condition and all other records relating to the operations of the Debtors.  The Debtors shall fully cooperate with the Agent regarding such reviews, evaluations, and inspections, and shall make their employees and professionals available to the Agent and its representatives, agents and advisors, to conduct such reviews, evaluations, and inspections.

**Interest, Fees, Costs and Expenses of the Agent and the Lenders**

64.    During the Cases, as additional adequate protection, all interest, fees, costs, and expenses, including, without limitation, attorneys' fees and expenses and financial advisors' fees and expenses, due at any time to the Agent and the Lenders under the Pre-Petition Claim Documents and/or the DIP Facility Documents (including, without limitation, the expenses described in Section 7 of the DIP Amendment), as applicable, that are incurred as a result of or in any way related to the Debtors' Cases, or incurred prior to and unpaid on the Petition Date (collectively, the "Lenders' Costs"), may be charged by the Agent and the Lenders

and shall be paid by the Debtors out of the Cash Collateral or out of any DIP Facility advances, on no less frequently than a monthly basis, up to the aggregate amount for such Lenders' Costs set forth in the Budget or, if greater than such amount in the Budget, only if approved in writing by the Agent. The Debtors are hereby authorized to pay such Lenders' Costs without the Agent or the Lenders, or the Agent's or the Lenders' counsel, having to file any further application with this Court for approval or payment. Any such Lenders' Costs that constitute fees and expenses incurred by any professional retained by the Agent shall be paid within 10 calendar days of delivery of (a) a summary invoice to the Debtors, which may be redacted for privilege as determined by the Agent, and (b) a detailed invoice, which may be redacted for privilege as determined by the Agent solely, to the U.S. Trustee and Creditors' Committee; provided, however, that (i) any redacted fee statements shall retain all privileges irrespective of any disclosure of any privileged matter, and any such disclosure shall be deemed inadvertent for all purposes and deemed stricken from any record in these Cases or otherwise, (ii) if the Debtors, U.S. Trustee, Creditors' Committee objects to the reasonableness of such fees and expenses and cannot resolve such objection within 5 business days of service of such invoice(s), the Debtors, U.S. Trustee, or Creditors' Committee, as the case may be, shall file and serve upon such professional an objection with the Court (a "Fee Objection") limited to the issue of the reasonableness of the disputed fees and expenses within 10 calendar days of the delivery of such invoice; (iii) if the Debtors, U.S. Trustee, or Creditors' Committee fails to object to the reasonableness of such fees and expenses within 10 calendar days, any objection of the Debtors, U.S. Trustee, or Creditors' Committee, as the case may be, shall be waived, (iv) the Debtors shall timely pay in accordance with this Financing Order the undisputed fees and expenses reflected on any invoice to which a Fee Objection has been timely filed, and (v) notwithstanding the

foregoing (i), (ii), (iii), and (iv) of this sentence, the Lenders' Costs incurred prior to and unpaid as of the Petition Date shall be paid indefeasibly upon entry of this Financing Order. Payments of Lenders' Costs may be effectuated directly by the Agent and all such payments shall constitute advances under the DIP Facility. All Lenders' Costs owed to the Agent and/or the Lenders, regardless of whether or not such Lenders' Costs are set forth in the Budget and including, without limitation, all fees referred to in the DIP Facility Documents (including, without limitation, all attorneys' and other professionals' fees and expenses), shall constitute obligations under the DIP Facility and shall be secured by the Collateral and afforded all priorities and protections afforded to the DIP Facility under this Financing Order and the DIP Facility Documents.

### Professional Fees of the Estates

65.    As used in this Financing Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, but subject to final allowance by the Bankruptcy Court, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals"), and Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by

the Post-Petition Agent of a Carve Out Trigger Notice (as defined below), with any such Allowed Professional Fees incurred by Creditors' Committee Professionals to be limited to an aggregate amount of $600,000 for its legal professionals and $100,000 for its financial advisor in the month of April 2016, and an aggregate of $325,000 per month thereafter ($225,000 for legal professionals and $100,000 for its financial advisor), inclusive of the $175,000 for fees, costs, or expenses incurred for investigation as provided in Paragraph 101 of this Financing Order, and provided that unused amounts may be carried forward or backward to the extent not accrued in any month (and provided further that nothing shall restrict the Creditors' Committee from asserting Allowed Professional Fees of the Committee Professionals against the Debtors in accordance with the Bankruptcy Code or other order of this Court); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $250,000 incurred after the first business day following delivery by the Post-Petition Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amount set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean, a written notice stating that the Post-Carve Out Trigger Notice Cap has been invoked, delivered by hard copy, facsimile, or email (or other electronic means) by the Post-Petition Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to any Creditors' Committee, which notice may be delivered following the occurrence and continued existence of an Event of Default under the terms of the DIP Facility or this Financing Order.

66.    The Carve Out amounts for the fees and expenses of the Professional Persons shall be invoiced to the Debtors monthly and promptly deposited into a segregated account of the applicable Debtor with the Post-Petition Agent and held in trust to pay Allowed

Professional Fees of Professional Persons benefitting from the Carve Out, with such funds being subject to the respective interests of the Post-Petition Lenders and Pre-Petition Lenders such that any residual amount (the "Residual Amount") will be paid as provided in the Carve Out Reserve Account Priority (as defined below), but only after payment of all Allowed Professional Fees of Professional Persons benefitting from the Carve Out (the "Carve Out Reserve Account"). Allowed Professional Fees of Professional Persons benefitting from the Carve Out shall be paid from the Carve Out Reserve Account.  The "Carve Out Reserve Account Priority" is the following payment priority from the Carve Out Reserve Account to the extent of the Residual Amount: first, to pay the Post-Petition Agent for the benefit of the Post-Petition Lenders and, until and unless the DIP Facility has been indefeasibly paid in full in cash and all DIP Facility commitments have been terminated, second, to the Pre-Petition Agent for the benefit of the Pre-Petition Lenders, and third, any remaining amount shall be retained by the bankruptcy estate(s).

66. 67.    On the day on which a Carve Out Trigger Notice is given by the Post-Petition Agent to the Debtors with a copy to counsel to the Creditors' Committee (the "Termination Declaration Date"), notwithstanding anything in the DIP Agreement to the contrary, including with respect to the existence of a Default (as defined in the DIP Agreement) or Event of Default, the failure of the Debtors to satisfy any or all of the conditions precedent for borrowings under the DIP Facility, any termination of the commitments under the DIP Facility following an Event of Default, or the occurrence of the Maturity Date (as defined in the DIP Agreement), the Carve Out Trigger Notice shall be deemed a draw request and notice of borrowing by the Debtors, as applicable, per the terms of the DIP Facility, in an amount equal to the accrued and unpaid Professional Fees that have not yet been deposited in the Carve Out Reserve Account plus the Post-Carve Out Trigger Notice Cap.

68.    Notwithstanding anything to the contrary in the terms of the DIP Facility, following delivery of a Carve Out Trigger Notice, the Post-Petition Agent and the Pre-Petition Agent shall not sweep or foreclose on cash (including, without limitation, cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserve Account has been fully funded.   Further, notwithstanding anything to the contrary in this Financing Order, (i) while amounts deposited into the Carve Out Reserve Account shall constitute Loans (as defined in the DIP Agreement), disbursements by the Debtors from the Carve Out Reserve Account shall not constitute Loans or increase or reduce the DIP Obligations, (ii) the failure of the Carve Out Reserve Account to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors, save and except for the Allowed Professional Fees of the Committee Professionals which shall be limited to an aggregate amount of $600,000 for its legal professionals and $100,000 for its financial advisor in the month of April 2016, and an aggregate of $325,000 per month thereafter ($225,000 for legal professionals and $100,000 for its financial advisor), inclusive of the $175,000 for fees, costs, or expenses incurred for investigation as provided in Paragraph 101 of this Financing Order, and provided that unused amounts may be carried forward or backward to the extent not accrued in any month (and provided further that nothing shall restrict the Creditors' Committee from asserting Allowed Professional Fees of the Committee Professionals against the Debtors in accordance with the Bankruptcy Code or other order of this Court).   For the avoidance of doubt and notwithstanding anything to the contrary in this Financing Order or in the DIP Facility, or in any facility under the Pre-Petition Claim

Documents, the Carve Out shall be senior to all liens and claims securing the DIP Facility and DIP Obligations, the Adequate Protection Liens, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the prepetition secured obligations.

69.     The Post-Petition Agent, the Post-Petition Lenders, the Pre-Petition Agent, and the Pre-Petition Lenders shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in this Financing Order or otherwise shall be construed to obligate the Post-Petition Agent, the Post-Petition Lenders, the Pre-Petition Agent, and/or the Pre-Petition Lenders in any way, to pay compensation to, or to reimburse expenses of, any Professional Person, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement, and any such obligation to make payments to any Professional Person shall be an obligation of the applicable bankruptcy estate.

70.     Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Post-Carve Out Trigger Notice Cap.

71.     Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Financing Order, the DIP Documents, the Bankruptcy Code, and applicable law.

72.     Other than the Carve Out set forth above, none of the Post-Petition Agent, the Post-Petition Lenders, the Pre-Petition Agent and the Pre-Petition Lenders consents to any

carve out from their Collateral for payment of any fees and expenses of the Professional Persons. The amounts payable on account of Professional Fees are subject to final approval and allowance by the Bankruptcy Court, and to the extent the amounts funded in the Carve Out Reserve Account exceed the amount so allowed, any excess shall be distributed per the Carve Out Reserve Account Priority.

73.    Until such time as the Lenders' Pre-Petition Claim and the DIP Obligations shall have been indefeasibly paid and satisfied in full in accordance with the Pre-Petition Claim Documents and the DIP Facility Documents, any remaining unapplied retainer funds at the conclusion of a Professional Person's engagement shall be immediately returned to Agent, for itself and for and on behalf of the Lenders, as the Lenders' Cash Collateral.

74.    Notwithstanding the foregoing, in no event shall Cash Collateral, the Carve Out, the Carve Out Reserve Account, or the proceeds of any loans, advances, or other funds made available by any of the Lenders to or for the benefit of the Debtors be used for the payment or reimbursement of any fees, expenses, costs or disbursements of any Professional Persons or other persons incurred with the purpose of: (a) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or enforceability of the Lenders' Pre-Petition Claim, the Pre-Petition Claim Documents, the DIP Facility, the DIP Facility Documents, the Interim Financing Order, this Financing Order, or any liens or security interest granted thereby or with respect thereto, or any other rights or interests of the Agent or the Lenders under any Pre-Petition Claim Document or DIP Facility Document, (b) investigating, asserting, prosecuting or the joinder in any claims or causes of action against the Agent or the Lenders, or any of their officers, directors, employees, affiliates, agents, attorneys, or equity holders (whether arising under state law, the Bankruptcy Code or any other federal or foreign

law); (c) preventing, enjoining, hindering or otherwise delaying the Agent's or the Lenders' enforcement of the Pre-Petition Claim Documents, the DIP Facility Documents or this Financing Order or any realization upon any Collateral (unless such enforcement or realization is in direct violation of an explicit provision in any DIP Facility Document or this Financing Order); (d) incurring indebtedness except as permitted by the DIP Facility Documents or this Financing Order; (e) modifying the Post-Petition Agent's or the Post-Petition Lenders' rights under any DIP Facility Documents, the Interim Financing Order, or this Financing Order without the Post-Petition Agent's or the Post-Petition Lenders' consent; (f) asserting or declaring any liens or security interests granted under any of the Pre-Petition Claim Documents, the DIP Facility Documents, or this Financing Order to have a priority other than the priority set forth in this Financing Order or therein; (g) asserting, prosecuting or the joinder in, any action or other proceeding seeking to grant a lien or security interest senior to, or on parity with, the liens and security interests of the Agent and the Lenders in the Collateral or any portion thereof without the Agent's and the Lenders' written consent; (h) asserting or declaring any of the Pre-Petition Claim Documents, DIP Facility Documents, the Interim Financing Order, or this Financing Order to be invalid, not binding or unenforceable in any respect; or (i) using Cash Collateral or selling any Collateral except as specifically permitted in the DIP Facility Documents or this Financing Order; *provided* that nothing in this Financing Order shall mean that any Allowed Professional Fees of the Committee Professionals for contesting this Financing Order cannot be paid. Notwithstanding the foregoing, Cash Collateral or DIP Facility advances deposited into the Carve Out Reserve Account may be used to pay the fees earned and expenses incurred of counsel to the Creditors' Committee in an amount not to exceed $175,000 for reviewing the Lenders'

Pre-Petition Claim, the Pre-Petition Claim Documents, and any liens or security interest granted thereby.

## No Surcharge

75.     No costs or expenses of administration which have or may at any time be incurred in these Cases (or in any successor chapter 7 case) shall be charged against the Agent or the Lenders, their claims or the Collateral pursuant to Bankruptcy Code § 506(c) without the prior written consent of the Agent and the Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by Lender.  The Agent and the Lenders shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

## Proofs of Claim

76.     None of the Prepetition Secured Parties will be required to file proofs of claim in any of the Chapter 11 Cases or successor cases, and the Debtors' stipulations in this Financing Order shall be deemed to constitute a timely filed proof of claim against the applicable Debtor(s). Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in any of the Chapter 11 Cases or successor cases shall not apply to the Prepetition Agent or the Prepetition Secured Parties with respect to the Prepetition Indebtedness. Notwithstanding the foregoing, the Prepetition Agent (on behalf of itself and the other Prepetition Secured Parties) is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a master proof of claim for any claims of the Prepetition Secured Parties arising from the Prepetition Loan Documents; provided, however, that nothing in this Financing Order shall waive the right of any Prepetition Secured Party to file its own proof of claim against the Debtors.

## EVENTS OF DEFAULT/REMEDIES

### Events of Default

77.   The occurrence of any of the following shall constitute an Event of Default under this Financing Order and the DIP Facility Documents: (a) any default, event of default, violation, or breach by any of the Debtors of any of the terms of this Financing Order or any default, event of default, or Event of Default (as such term is defined in the DIP Facility Documents) under the DIP Facility Documents; (b) the occurrence of the Expiration Date (as defined below), maturity, termination, expiration, or non-renewal of this Financing Order or the DIP Facility as provided for in this Financing Order or in any of the DIP Facility Documents; (c) the Debtors shall fail to pay any principal of the DIP Facility and DIP Obligations when the same becomes due and payable; (d) the Debtors shall fail to pay any interest on the DIP Facility and DIP Obligations or any fee or other amount due with respect to the DIP Facility and DIP Obligations after such interest, fee, or other amount becomes due and payable; (e) the Debtors shall fail to obtain, on or before 30 days after the Petition Date, an order by the Court approving the Financing Motion on a final basis in form and substance satisfactory to the Agent, for itself and for and on behalf of the Lenders, in its sole and absolute discretion; (f) any representation or warranty made by the Debtors in any DIP Facility Document or in any statement or certificate given after the effective date of the DIP Amendment by any of the Debtors in writing pursuant to any DIP Facility Document or in connection with any DIP Facility Document shall be false in any material respect on the date as of which made; (g) any of the Debtors' Cases shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code; (h) the appointment of a trustee or examiner with expanded powers (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code) under 1106(b) of the Bankruptcy Code in any of the Debtors' Cases; (i) any security interest, lien, or encumbrance, excluding any Prior Liens, shall be granted in any

of the Collateral which is *pari passu* with or senior to the liens, security interests, or claims of the Agent or the Lenders, including, without limitation, any surcharge of the Collateral pursuant to Bankruptcy Code §506(c), unless the Post-Petition Agent or the Majority Post-Petition Lenders agree in writing that such security interest, lien, or encumbrance does not constitute an Event of Default; (j) the entry of an order granting relief from the Automatic Stay to the holder or holders of any other security interest or lien (other than the Agent or the Lenders) in any Collateral to permit the pursuit of any judicial or non-judicial transfer or other remedy against any of the Collateral, in each case involving assets with a value in excess of $250,000; (k) any provision of the DIP Facility Documents shall cease to be valid and binding on the Debtors, or the Debtors shall so assert in any pleading filed with any court; (l) the Debtors shall attempt to vacate or modify the Interim Financing Order or this Financing Order over the objection of the Agent, for itself and for and on behalf of the Lenders; (m) the entry of an order pursuant to Bankruptcy Code § 363 approving the sale of a material portion of any of the Debtors' assets, unless the Post-Petition Agent or the Majority Post-Petition Lenders agree in writing that such sale does not constitute an Event of Default; (n) the failure to meet any of the Sale Milestones (as defined below); (o) the entry of any order modifying, reversing, revoking, staying, rescinding, vacating, or amending the Interim Financing Order or this Financing Order; (p) the filing by the Debtors or confirmation of a plan of reorganization that (1) does not provide for indefeasible payment in full in cash of all obligations owing under the DIP Facility or (2) is not acceptable to the Agent in the treatment of the Lenders' Pre-Petition Claim or the DIP Facility and DIP Obligations; (q) any challenge to the extent, validity, priority, or unavoidability of the Agent's or the Lenders' liens securing the Lenders' Pre-Petition Claim and/or the DIP Facility and DIP Obligations is commenced by the Debtors or an order is entered sustaining any such challenge commenced by

any party other than the Debtors; or (r) the occurrence of any default under any DIP Facility Document (any of the foregoing events of default being referred to in this Financing Order, individually, as an "Event of Default", or severally, as "Events of Default").

**Remedies**

78.     Upon the occurrence of any Event of Default, and its continued existence following the giving of five (5) days' prior written notice (the "Default Notice Period") to the Debtors, Creditors' Committee, and the U.S. Trustee, provided that no such notice or any notice of any kind is required if the Termination Date (defined below) occurs, at all times thereafter, and without further act or action by the Agent, or any further notice, hearing, or order of this Court: (a) any and all obligations of the Post-Petition Agent and the Post-Petition Lenders in connection with the DIP Facility or under this Financing Order and the DIP Facility Documents shall immediately terminate, (b) the Post-Petition Agent, for itself and for and on behalf of the Post-Petition Lenders may declare all or any part of the DIP Facility and DIP Obligations to be immediately accelerated and due and payable for all purposes, rights, and remedies, and (c) the Debtors' authority to use Cash Collateral shall immediately terminate; provided that during such five (5) day Default Notice Period, the Debtors and Creditors' Committee may seek an emergency hearing before this Court, and must provide prompt notice of such hearing to the Post-Petition Agent and the Post-Petition Lenders, to contest whether an Event of Default has occurred; and provided further that the Post-Petition Lenders shall not be obligated to make any loans or advances under the DIP Facility during any Default Notice Period.

79.     Furthermore, upon the occurrence of any Event of Default that continues to exist after the Default Notice Period, then without further act or action by the Agent, or any further notice, hearing or order of this Court, the Automatic Stay shall be immediately modified and the Agent shall be and are hereby authorized, in its sole and absolute discretion, to take any

and all actions and remedies that the Agent may deem appropriate to proceed against, take possession of, protect, and realize upon the Collateral and any other property of any of the estates of the Debtors, including, without limitation, (i) any right or remedy set forth in the DIP Facility Documents, (ii) any right or remedy that the Agent may deem appropriate to proceed against, take possession of, foreclose upon, sell (in whole or in part), protect, and realize upon the Collateral and any other property of any of the Debtors' estates upon which the Agent and the Lenders have been or may hereafter be granted liens and security interests to obtain repayment of the DIP Facility and DIP Obligations and the Lenders' Pre-Petition Claim, (iii) the commencement of actions for specific performance and for the foreclosure upon any Collateral, (iv) the sale of the Collateral, or any portion thereof, either as a whole or in part, at private or public auction, and the Agent, for itself and for and on behalf of the Lenders shall have the right to purchase the Collateral at same by credit bidding all or a part of their debt or otherwise, (v) taking possession of the Collateral, and the exercise, without interference, and, if necessary, as the attorney-in-fact for the Debtors, of any rights of the Debtors in the management, possession, operation, protection or preservation of the Collateral, (vi) the receipt of proceeds from the sale of any Collateral, (vii) the direction of the payment for any purchase of the Collateral directly to the Agent, for itself and for and on behalf of the Lenders, as applicable, and (viii) the right of setoff and recoupment as to any funds of the Debtors' estates held by the Agent, for itself and for and on behalf of the Lenders; provided that the Agent and the Lenders shall not be obligated to take title to any of the Collateral in the pursuit of any of the Agent's or the Lenders' rights and remedies and the Debtors shall cooperate with the Agent and the Lenders in conjunction with the exercise of any right and the pursuit of any remedy by the Agent or the Lenders without limitation.

80.     Upon or after the occurrence of any Event of Default, the Agent and the Lenders may, in their sole and absolute discretion, advance funds to the Debtors, and all such advances (i) shall not constitute a waiver, limitation, or modification of the Agent's and the Lenders' rights and remedies pursuant to the Pre-Petition Claim Documents, the DIP Facility Documents, the Interim Financing Order, this Financing Order, and applicable law and (ii) shall be and hereby are granted all of the protections granted to the Agent and the Lenders under this Financing Order in connection with the DIP Facility.

### Sale Process

81.     As a condition to the DIP Facility and as further adequate protection of the Agent and the Lenders for the use of the Collateral, the Debtors shall conduct a comprehensive marketing and sale process of their assets and businesses in accordance with each of the following requirements by the applicable date set forth below ("Sale Milestones"):

a.     Sales Agent.  On or prior to 30 days after the Petition Date, the Debtors shall obtain entry of an employment order that provides for:  (i) the engagement of the services of a sales agent, acceptable to the Agent in its reasonable discretion, which, for the avoidance of doubt, shall include Intrepid Partners, LLC (such sales agent, the "Sales Agent"), (ii) the vesting of the Sales Agent with the duty to sell all or substantially all of the assets of the Debtors free and clear of all liens and other interests in accordance with Bankruptcy Code § 363 (b) and (f) (a "Sale Transaction") and the Sale Milestones, and (iii) approval of an engagement agreement with the Sales Agent on terms and conditions acceptable to the Agent in its reasonable discretion, it being understood that the Debtors' engagement letter with Intrepid Partners, LLC dated March 17, 2016 is acceptable to the Agent.

b.      Draft Marketing Materials.  On or prior to March 28, 2016, the Debtors (or the Sales Agent on behalf of the Debtors) shall deliver to the Agent (i) a list of potential buyers (each an "Target Party" and collectively the "Target Parties") the Sales Agent plans to contact regarding the Sale Transaction, (ii) a form confidentiality agreement for distribution to the Target Parties(the "NDA"), and (iii) a draft marketing document for distribution to the Target Parties which provides a brief overview of the Debtors' assets and business, the planned process and timeline for the sale process, and the contact information for representatives of the Sales Agent (the "Teaser"); in each case in form and substance satisfactory to the Agent in its reasonable discretion.

c.      Distribution of Marketing Materials & Opening of Data Room.  On or prior to April 1, 2016, the Debtors (or the Sales Agent on behalf of the Debtors) shall have distributed the NDA and Teaser to the Target Parties and opened and populated a virtual data room (the "VDR") with documents and other information typically provided by sellers to prospective purchasers of similar assets and businesses for purposes of their due diligence.  Target Parties that have executed NDAs, the Debtors, the Agent, and the professionals of each of the foregoing parties shall have access to the VDR.

d.      Initial Indications of Interest.  On or prior to April 15, 2016, the Sales Agent (on behalf of the Debtors) shall have solicited from the Target Parties non-binding indications of interest for the Sale Transaction, including estimated purchase price, proposed "stalking horse" bid considerations, and any requisite financing plans and contingencies (the "Indications of Interest"), and shall

promptly delivered to the Agent any such Indications of Interest submitted by a potential purchaser (an "Interested Party").

e.      Management Presentations.  On or prior to May 6, 2016, the Debtors' management shall conduct presentations regarding the Debtors' business and assets to the Interested Parties that the Sales Agent judges to be most promising (the "Second Round Parties") and shall distribute to the Second Round Parties a proposed, draft "stalking horse" asset purchase agreement (the "Proposed APA") in form and substance satisfactory to the Agent in its reasonable discretion.  The presentation materials from the management presentation, as well as the Proposed APA, shall also be made available in the VDR.

f.      Final Bids and Mark-Up of Proposed APA.  On or prior to May 13, 2016, the Debtor shall have solicited final bid letters and proposed asset purchase agreements (black-lined against the Proposed APA) and any requisite financing commitment materials (collectively, the "Second Round Bid Package") from the Second Round Bidders to serve as a "stalking horse" purchaser, and the Debtors shall promptly deliver copies to the Agent of any such Second Round Bid Packages received.

g.      Motion to Approve Sale and Bid Procedures.  On or prior to May 20, 2016, the Debtors shall have filed a motion seeking entry of an order by the Court approving bid procedures with respect to consummation of a Sale Transaction and scheduling an auction date, bid deadline, and final sale hearing, on terms and conditions acceptable to the Agent in its reasonable discretion (the "Bid Procedures Motion").  At the time of the filing of the Bid Procedures Motion or

anytime thereafter the Debtor may propose a "stalking horse" bidder acceptable to the Agent in its reasonable discretion.

h.       Order Approving Sale and Bid Procedures.  On or prior to June 10, 2016, the Debtors shall have obtained the entry of an order by the Court approving the Bid Procedures Motion on terms and conditions acceptable to the Agent in its reasonable discretion.

i.       Auction.  On or prior to July 11, 2016, the Sales Agent shall conduct an auction of substantially all of the Debtors' assets.

j.       Order Approving Sale.  On or prior to July 15, 2016, the Debtor shall have obtained entry of an order by the Court approving the Sale Transaction in accordance with Bankruptcy Code § 363 (b) and (f), on terms and conditions acceptable to the Agent in its reasonable discretion.

k.       Sale Consummation.  On or prior to July 22, 2016, the Debtors shall have closed and consummated the Sale Transaction.

82.       Each of the Sale Milestones may only be extended or waived in writing by the Agent in its sole and absolute discretion.  The Debtors shall promptly file with the Court a notice of any such extension or waiver.

83.       The Agent, for itself and for and on behalf of the Lenders, may credit bid, in its sole and absolute discretion, any portion and up to the entire amount of the Agent and the Lenders' respective claims, including, without limitation, both the Lenders' Pre-Petition Claim and the DIP Obligations (as applicable), at any time on any individual asset, portion of the assets, or all assets constituting their respective Collateral in conjunction with any sale of the Debtors' assets (the "Credit Bid Right").

## OTHER TERMS

84.    The Debtors and the Agent are authorized to implement, in accordance with the terms of the DIP Facility Documents, any modifications or amendments to any DIP Facility Document upon the approval of the Majority Post-Petition Lenders, except with respect to certain matters specified in the DIP Agreement or the DIP Facility Documents requiring the approval of all Post-Petition Lenders; provided that any material modifications will be filed with the Court and parties in interest shall have seven (7) days to object to such modification; *provided, further,* that any immaterial modifications shall be provided to the Creditors' Committee.

85.    Other than any Prior Liens and the Carve Out, no priority claims shall be allowed that are or will be prior to or on parity with the superpriority claims or secured claims of the Agent and the Lenders against the Debtors and their estates arising from the Pre-Petition Claim Documents, the DIP Facility Documents, the Interim Financing Order, and this Financing Order.

86.    No obligations incurred or payments or other transfers made by or on behalf of the Debtors on account of the post-petition financing arrangements with the Post-Petition Agent and the Post-Petition Lenders shall be avoidable or recoverable from the Post-Petition Agent and the Post-Petition Lenders under any section of the Bankruptcy Code, or any other federal, state, or other applicable law.

87.    Except for the reasonable and necessary sale of inventory in the ordinary course of the Debtors' business and as may be provided for in the Budget and consistent with the terms of the DIP Agreement, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any of the Collateral, without the prior written consent of the Agent.

88.     As a current and continuing condition precedent to each advance to be made under the DIP Facility, any employment by any of the Debtors of (i) Opportune LLP as financial advisor and chief restructuring officer (the "CRO") shall provide that Opportune LLP and its representatives shall report and be accountable only to the independent directors of the Debtors, and (ii) Intrepid Partners, LLC shall provide that Intrepid Partners, LLC shall report and be accountable only to the CRO, or only to the CRO and the independent directors of the Debtors, as determined by Intrepid Partners, LLC and the independent directors of the Debtors.

89.     All post-petition advances under the DIP Agreement are made in reliance on this Financing Order and so long as the DIP Obligations and the Lenders' Pre-Petition Claim remain unpaid, there shall not at any time be entered in the Debtors' Cases any other order that, except as consented to by the Agent in writing, (a) authorizes the use of Cash Collateral or the sale, lease, or other disposition of the Collateral unless the cash proceeds will indefeasibly pay the Lenders' Pre-Petition Claim and the DIP Obligations in full, (b) authorizes the obtaining of credit or the incurring of indebtedness secured by a lien or security interest in property in which the Agent or the Lenders hold or assert liens or security interests, or (c) grants to any claim a priority administrative claim status that is equal or superior to the superpriority status granted to the Agent and the Lenders in this Financing Order.

90.     The terms hereunder and under the DIP Facility Documents, the security interests and liens granted to the Agent and the Lenders under the Interim Financing Order and this Financing Order, and the rights of the Agent and the Lenders pursuant to the Interim Financing Order and this Financing Order with respect to the Collateral, and the approval of the Lenders' Pre-Petition Claim becoming DIP Obligations as set forth in this Financing Order shall

not be altered, modified, extended, impaired, or affected by any plan of reorganization of the Debtors without the prior written approval of the Agent.

91.     The terms and provisions of this Financing Order and any actions taken pursuant hereto shall survive entry of any order that may be entered converting to chapter 7 or dismissing the Debtors' Cases, except for the Debtors' authority to use Cash Collateral and any obligations of the Post-Petition Agent and the Post-Petition Lenders under the DIP Facility Documents (all of which shall immediately terminate upon entry of such an order).  The terms and provisions of this Financing Order, as well as the priorities in payment, liens, and security interests granted pursuant to the Interim Financing Order, this Financing Order, and the DIP Facility Documents, shall continue in this or any superseding case under the Bankruptcy Code of any of the Debtors, and such priorities in payment, liens, and security interests shall maintain their priority as provided by the Interim Financing Order and this Financing Order until such time as the Lenders' Pre-Petition Claim and the DIP Obligations shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Pre-Petition Claim Documents and the DIP Facility Documents and the Agent and the Lenders shall have no further obligation or financial accommodation to any of the Debtors.

92.     The provisions of this Financing Order shall inure to the benefit of the Debtors, the Agent, and the Lenders, and they shall be binding upon (a) the Debtors and their successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed as legal representative of the Debtors or with respect to property of the estates of the Debtors, whether under chapter 11 of the Bankruptcy Code, any confirmed plan, or any subsequent chapter 7 case, and (b) all creditors of any of the Debtors and other parties in interest.

93. If any or all of the provisions of this Financing Order are hereafter modified, vacated, or stayed without the prior written agreement of the Agent, such modification, vacation, or stay shall not affect (a) the validity of any obligation, indebtedness or liability incurred by the Debtors to the Agent and the Lenders before the effective date of such modification, vacation, or stay or (b) the validity or enforceability of any security interest, lien, priority or other protection authorized, granted, or created hereby or pursuant to the Interim Financing Order or any of the DIP Facility Documents. Notwithstanding any such modification, vacation, or stay, any indebtedness, obligations, or liabilities incurred by the Debtors to the Agent, for itself or for and on behalf of the Lenders, before the effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this Financing Order, and the Agent, for itself and for and on behalf of the Lenders, shall be entitled to all the liens, rights, remedies, privileges, and benefits granted in this Financing Order, in the Interim Financing Order, and pursuant to the DIP Facility Documents with respect to all such indebtedness, obligations, or liabilities.

94. To the extent the terms and conditions of the DIP Facility Documents are in express conflict (as opposed to being additive, limiting, or more specific than this Financing Order) with the terms and conditions of this Financing Order, the terms and conditions of this Financing Order shall control.

95. No approval, agreement, or consent requested of the Agent by the Debtors pursuant to the terms of this Financing Order or otherwise shall be inferred from any action, inaction, or acquiescence of the Agent other than a writing acceptable to the Agent that is signed by the Agent and expressly shows such approval, agreement or consent, without limitation.

Nothing in this Financing Order shall in any way affect the rights of the Agent or the Lenders as to any non-Debtor entity, without limitation.

96.     Nothing in this Financing Order shall be deemed or construed to waive, limit, or modify the rights of the Agent, for itself or for and on behalf of the Lenders, to obtain further adequate protection and other statutory protections for the use of the Collateral and Cash Collateral, or to seek other relief in these Cases in accordance with any provision of the Bankruptcy Code or applicable law.

97.     Unless expressly and specifically provided otherwise in this Financing Order, nothing in this Financing Order shall be deemed or construed to waive, limit, modify or prejudice the claims, rights, protections, privileges and defenses of the Agent and the Lenders afforded pursuant to the Bankruptcy Code.

98.     This Financing Order, and the findings of fact and conclusions of law contained in this Financing Order, shall be effective upon signature by the Court, and may be relied upon by the Agent, the Lenders, and the Debtors without the necessity of entry into the docket sheet of these Cases.  To the extent any findings may constitute conclusions, and vice versa, they are hereby deemed as such.

99.     This Court hereby expressly retains jurisdiction over all persons and entities, co-extensive with the powers granted to the United States Bankruptcy Court under the Bankruptcy Code, to enforce the terms of this Financing Order and to adjudicate any and all disputes in connection therewith by motion and without necessity of an adversary proceeding.

100.     All headings in this Financing Order are descriptive and for reference only, and do not have separate meaning or change any terms therein.

## RESERVATION OF RIGHTS OF PARTIES IN INTEREST/DEADLINE TO ACT

101.    All parties-in-interest (other than the Debtors, but including, for the avoidance of doubt, the Creditors' Committee) that have or have been granted standing shall have until July 5, 2016 (or, in the case of a trustee, 90 days from the date of appointment of the trustee) to file a complaint pursuant to Bankruptcy Rule 7001 asserting a claim or cause of action arising out of the Pre-Petition Claim Documents, or otherwise challenging the extent, priority, validity, perfection, amount, or allowability of the Pre-Petition Agent's or the Pre-Petition Lenders' claims or security interests, arising out of or related to the Pre-Petition Claim Documents or the transactions related thereto.  Such complaint, if filed, shall be diligently pursued by such party in interest or Creditors' Committee, as applicable.  Upon the filing by the Creditors' Committee of a motion seeking standing to file such a complaint, such Creditors' Committee's investigation period as provided in this paragraph shall be tolled until 3 business days after the Court enters an order on such motion, provided that the hearing on such motion shall be concluded within 30 days of the filing of such motion (subject to the docket schedule of the Court).  Otherwise, if no action is commenced or pursued in accordance with the deadlines in this paragraph or such deadlines are not extended in writing by the Agent in its sole and absolute discretion, all of the Debtors' stipulations and affirmations of the allowance, priority, extent, and validity of the Agent's and the Lenders' claims, liens, and interests, of any nature set forth in this Financing Order and the Debtors' waivers and releases as contained in the Pre-Petition Claim Documents or otherwise incorporated or set forth in this Financing Order shall be of full force and effect and forever binding upon the Debtors' bankruptcy estates and all creditors and parties-in-interest of these Cases, including, without limitation, upon any creditors or parties-in-interest that did not have or were not granted standing prior to such deadlines.  Notwithstanding the foregoing and regardless of the timely commencement of an action as contemplated in this

paragraph, the Debtors' stipulations and affirmations of the allowance, priority, extent, and validity of the Agent's and the Lenders' claims, liens, and interests, of any nature set forth in this Financing Order and the Debtors' waivers and releases as contained in the Pre-Petition Claim Documents or otherwise incorporated or set forth in this Financing Order shall be in full force and effect with respect to any claims or causes of action not timely raised within the deadlines set forth in this paragraph.

102.    In the event of a successful prosecution of any avoidance action which results in a final and non-appealable judgment that the Agent or the Lenders are not entitled to amounts transferred on account of that portion of the DIP Obligations comprised of the Lenders' Pre-Petition Claim as provided in Paragraph 30 of this Financing Order, such amounts shall be subject to disgorgement, but only to the extent that there is no other entitlement for the Agent or the Lenders to receive such amounts pursuant to any other claims they have or may come to have, including, without limitation, on account of the Lenders' Pre-Petition Claim, amounts for adequate protection, and related superpriority claims.

## **WAIVER OF CLAIMS**

103.    EACH OF THE DEBTORS (IN THEIR OWN RIGHT AND, SUBJECT TO THE RESERVATION OF RIGHTS OF PARTIES IN INTEREST/DEADLINE TO ACT IN PARAGRAPH 101 ABOVE, ON BEHALF OF THEIR ESTATES, REPRESENTATIVES, DIRECTORS, OFFICERS, EMPLOYEES, INDEPENDENT CONTRACTORS, ATTORNEYS AND AGENTS, AND THEIR SUCCESSORS AND ASSIGNS, IN EACH CASE TO THE EXTENT PERMITTED BY APPLICABLE LAW) (COLLECTIVELY, THE "RELEASING PARTIES") HEREBY RELEASES, ACQUITS, FOREVER DISCHARGES AND COVENANTS NOT TO SUE THE AGENT AND THE POST-PETITION LENDERS, AND THE AGENT'S, AND THE POST-PETITION LENDERS' REPRESENTATIVES,

DIRECTORS, OFFICERS, EMPLOYEES, INDEPENDENT CONTRACTORS, ATTORNEYS AND AGENTS, AND THEIR SUCCESSORS AND ASSIGNS (THE "RELEASED PARTIES") FROM ANY AND ALL ACTS AND OMISSIONS OF THE RELEASED PARTIES, AND FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, AVOIDANCE ACTIONS, COUNTERCLAIMS, DEMANDS, CONTROVERSIES, COSTS, DEBTS, SUMS OF MONEY, ACCOUNTS, RECKONINGS, BONDS, BILLS, DAMAGES, OBLIGATIONS, LIABILITIES, OBJECTIONS, LEGAL PROCEEDINGS, EQUITABLE PROCEEDINGS, AND EXECUTIONS OF ANY NATURE, TYPE, OR DESCRIPTION WHICH THE RELEASING PARTIES HAVE OR MAY COME TO HAVE AGAINST THE RELEASED PARTIES IN CONNECTION WITH OR RELATED TO THE DIP FACILITY AND THE TERMS AND PROVISIONS OF THIS FINANCING ORDER, AT LAW OR IN EQUITY, BY STATUTE OR COMMON LAW, IN CONTRACT, IN TORT, INCLUDING, WITHOUT LIMITATION, BANKRUPTCY CODE CHAPTER 5 CAUSES OF ACTION, WHETHER THE LAW OF THE UNITED STATES OR ANY OTHER COUNTRY, UNION, ORGANIZATION OF FOREIGN COUNTRIES OR OTHERWISE, KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, BUT EXCLUDING ONLY THEIR OBLIGATIONS UNDER THE DIP FACILITY ARISING AFTER THE DATE OF THIS FINANCING ORDER (COLLECTIVELY, THE "RELEASED CLAIMS"). THE DEBTORS ON BEHALF OF THE RELEASING PARTIES FURTHER COVENANT NOT TO SUE THE RELEASED PARTIES ON ACCOUNT OF ANY RELEASED CLAIM. THIS PARAGRAPH IS IN ADDITION TO AND SHALL NOT IN ANY WAY LIMIT ANY OTHER RELEASE, COVENANT NOT TO SUE, OR WAIVER BY THE RELEASING PARTIES IN FAVOR OF THE RELEASED PARTIES. NOTWITHSTANDING THE RELEASES AND COVENANTS IN FAVOR OF

THE RELEASED PARTIES CONTAINED ABOVE IN THIS PARAGRAPH, SUCH RELEASES AND COVENANTS IN FAVOR OF THE RELEASED PARTIES SHALL BE DEEMED ACKNOWLEDGED AND REAFFIRMED BY THE DEBTORS EACH TIME THERE IS AN ADVANCE OF FUNDS, EXTENSION OF CREDIT, OR FINANCIAL ACCOMMODATION UNDER THIS FINANCING ORDER AND THE DIP FACILITY DOCUMENTS.  FOR THE AVOIDANCE OF DOUBT, ANY AND ALL CLAIMS AND CAUSES OF ACTION (OTHER THAN THE RELEASED CLAIMS) THAT ARE ASSERTED, IF ANY, AGAINST THE PRE-PETITION AGENT OR THE PRE-PETITION LENDERS (IN THEIR PREPETITION CAPACITY) ARE NOT RELEASED BY THIS FINANCING ORDER, AND TO THE EXTENT ANY PROVISION HEREIN IS IN CONFLICT WITH THIS SENTENCE, THIS SENTENCE SHALL GOVERN, AND THE AGENT AND THE LENDERS RESERVE ALL RIGHTS TO DEFEND AGAINST AND OBJECT TO SAME, WITHOUT LIMITATION.

### INDEMNIFICATION

104.    THE DEBTORS SHALL AND DO HEREBY, JOINTLY AND SEVERALLY, INDEMNIFY AND HOLD EACH OF THE AGENT AND THE LENDERS (THE "INDEMNITY PARTIES") HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, LIABILITIES, LOSSES, DAMAGES, CAUSES OF ACTION, SUITS, JUDGMENTS, COSTS, AND EXPENSES, INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES, ARISING OUT OF OR FROM OR RELATED TO ANY OF THE PRE-PETITION CLAIM DOCUMENTS (PROVIDED THAT THE APPLICABLE INDEMNITY PARTIES PREVAIL) AND DIP FACILITY DOCUMENTS; PROVIDED THAT ANY SUCH AMOUNTS PAID PURSUANT TO THIS PARAGRAPH 104

SHALL NOT EXCEED THE DIP OBLIGATIONS, PLUS REASONABLE ATTORNEYS' FEES. IF ANY ACTION, SUIT, OR PROCEEDING IS BROUGHT AGAINST ANY OF THE INDEMNITY PARTIES, DEBTORS SHALL, AT THE AGENT'S OR THE LENDERS' REQUEST, DEFEND THE SAME AT THEIR SOLE COST AND EXPENSE, SUCH COST AND EXPENSE TO BE A JOINT AND SEVERAL LIABILITY OF DEBTORS, BY COUNSEL SELECTED BY LENDER. THE INDEMNIFICATION IN THIS PARAGRAPH IS NOT A WAIVER OF AND SHALL BE CUMULATIVE AND IN ADDITION TO ANY OTHER INDEMNITY RIGHTS OF THE INDEMNITY PARTIES UNDER THE PRE-PETITION CLAIM DOCUMENTS.

105.    Notwithstanding any due diligence period granted to other parties in interest in this Financing Order, as a result of the Debtors' review of the Pre-Petition Claim Documents and the facts related thereto, the Debtors shall have no right to file a complaint pursuant to Bankruptcy Rule 7001 or otherwise, or any other pleading asserting a claim or cause of action arising out of or related to the Pre-Petition Claim Documents, the DIP Agreement, or any transactions or dealings related to same.

## NOTICE

106.    The Debtors' proposed counsel shall serve this Financing Order on all of the following parties: (a) the Office of the United States Trustee; (b) the attorneys for the Agent and the Lenders; (c) all creditors known to the Debtors who have or may assert liens against any of the Debtors' assets; (d) the United States Internal Revenue Service; (e) the 20 largest unsecured creditors of the Debtors; (f) counsel to the Creditors' Committee; and (g) all parties in interest who have filed a notice of appearance or upon whom service must be effected under the Federal Rules of Bankruptcy Procedure or the Local Rules. Any notice required hereunder to the

Debtors or Creditors' Committee shall be deemed given when delivered by email, other electronic delivery, fax, or hard copy, to their respective counsel of record in these cases.

<b><u>EXPIRATION DATE/MATURITY</u></b>

107.    Subject to the Post-Petition Agent's and the Post-Petition Lenders' rights to make protective advances as provided in the DIP Agreement, the Post-Petition Agent's consent and Debtors' authority to use Cash Collateral and the Post-Petition Lenders' commitment to provide credit under the DIP Agreement and this Financing Order, subject to the funding and Budget limitations above, shall be effective upon entry of this Financing Order to and including, without limitation, the earlier of: (a) the continued existence of an Event of Default after the Default Notice Period, (b) the entry of an order pursuant to section 363 of the Bankruptcy Code approving the sale of substantially all of the Debtors' assets, (c) the effective date of any plan of reorganization, or (d) September 23, 2016, at 5:00 p.m. Eastern Time, at which time all of the Debtors' authority to use Cash Collateral and to obtain credit under the DIP Agreement and this Financing Order shall terminate, as shall the Post-Petition Agent's and the Post-Petition Lenders' obligation to continue funding the DIP Facility, unless extended by written agreement of the parties hereto, a copy of which with an updated Budget shall be promptly filed with this Court by the Debtors (the "<u>Expiration Date</u>", and (b), (c), and (d) of this paragraph, the "<u>Termination Date</u>").

<b>THIS FINANCING ORDER IS EFFECTIVE IMMEDIATELY.</b>

Dated: May 6, 2016
Wilmington Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE