**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------- x

| | : | Chapter 11 |
| In re: | : | |
| | : | Case No. 16-10704 (KG) |
| EMERALD OIL, INC., *et al.*, | : | |
| | : | Jointly Administered |
| Debtors.[1] | : | |
| | : | **Related Docket No. 713** |

---------------------------------------------------------- x

**KOCH EXPLORATION COMPANY, LLC'S
<u>OBJECTION TO PROPOSED CURE AMOUNT</u>[2]**

Koch Exploration Company, LLC ("KEC"), through its undersigned counsel, hereby

objects (the "Objection") to the proposed cure amount for its contracts with Emerald Oil, Inc.,

Emerald WB LLC, and Emerald NWB, LLC (collectively, "Emerald" or "Debtors") set forth in

the Notice of Proposed Assumption and Assignment of Certain Executory Contracts and

Unexpired Leases (the "Proposed Assumption Notice") filed by the Debtors on September 22,

2016 (Dkt No. 713) as modified by subsequent correspondence from the Debtors' counsel.  In

support of this Objection, KEC states as follows:

**<u>BACKGROUND</u>**

**A.      The Purchase and Sale Agreement**

1.      KEC and Debtors entered into a certain Purchase and Sale Agreement dated July

31, 2015 (the "PSA"), pursuant to which (i) Emerald sold a thirty percent (30%) working interest

in the Emerald Assets (as defined in the PSA) located in McKenzie County, North Dakota and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, include: Emerald Oil, Inc. (9000); Emerald DB, LLC (2933); Emerald NWB, LLC (7528); Emerald WB LLC (8929); and EOX Marketing, LLC (4887).  The location of the Debtors' service address is:  200 Columbine Street, Suite 500, Denver, Colorado 80206.

[2] Debtors consented to the filing of this Objection by today, September 28, 2016 because of the delayed notice of the proposed cure amounts.  (*See infra*, ¶ 22; Dkt No. 743.)

Richland County, Montana and (ii) KEC was to participate as a working interest owner jointly with Emerald in expenditures in connection with certain previously drilled and uncompleted wells in McKenzie County, North Dakota.  A true and correct copy of the PSA is attached hereto as Exhibit 1.

2.    Specifically, Section 8.1(a) of the PSA provides that Emerald shall:

(i) operate the Assets or cause the Assets to be operated in a manner consistent in all material respects with past practice; *(ii) pay or cause to be paid its proportionate share of all costs and expenses incurred in connection with such operations*; *(iii) maintain the Assets in their current condition, ordinary wear and tear excepted*; (iv) preserve the present relationships with Persons having business dealings with Emerald with respect to the Assets; *(v) comply with all contractual and other obligations with respect to the Assets*; (vi) not take any action which would adversely affect the ability of the Parties to consummate the transactions contemplated by this Agreement; . . .

(PSA, Exhibit 1, at 24.) (Emphasis added.)   Section 8.1(b) of the PSA provides that Emerald shall *not*:

(i) make or rescind any election relating to Taxes; (ii) make any material change to any of its methods of accounting or methods of reporting income or deductions for Taxes or accounting practice or policy from those employed in the preparation of Emerald's most recent Tax Return; (iii) settle or compromise any claim, action, suit, litigation, proceeding, arbitration, investigation, audit, or controversy in excess of Twenty-Five Thousand Dollars ($25,000.00); *(iii) [sic] subject to any Lien or other encumbrance or, except for Permitted Encumbrances, permit, allow, or suffer to be encumbered, any of the Assets*; (iv) cancel or compromise any debt or claim or waive or release any material right of Emerald with respect to the Assets; . . . *(vii) terminate, amend, restate, supplement, or waive any rights under any material contract, agreement, permit, or instrument relating to the Assets*; (viii) agree to do anything that would make any of Emerald's representations and warranties in this Agreement untrue or incorrect; (ix) sell lease, convey, or otherwise dispose of any part of, or interest in, the Assets; or (x) enter into any farmout, farmin, or other similar contract or arrangement with respect to the Assets; enter into any new contracts affecting the Assets with obligations in excess of thirty (30) days.

(PSA, Exhibit 1, at 24-25.) (Emphasis added.)

2

3. In Section 7.12 of the PSA, Emerald represented that, to Emerald's knowledge, "all rentals, royalties and operating expenses payable . . . have been duly and properly paid in all material respects . . . " (PSA, Exhibit 1, at 22-23.)

**B. The Wells' Operating Agreements**

4. The three Emerald Oil wells subject to the PSA (and subject to assumption and assignment herein) are: (i) Greg Marmalard Federal 3-28-33H, (ii) Dagny Taggart 3-21-16H, and (iii) Eric Stratton Federal 5-36-25H (collectively, the "Wells").

5. The Wells' operations are governed by Model Form Operating Agreements ("Operating Agreements"). A true and correct copy of the Greg Marmalard Operating Agreement is attached hereto as Exhibit 2.[3] Emerald Oil, Inc. is the Operator for each of the Wells.

6. Article V, Section D of the Operating Agreements governs the rights and duties of the Operator, Emerald Oil.

7. Subsection 2 provides that the "Operator shall promptly pay and discharge expenses incurred in the development and operation of the [Wells] pursuant to this agreement and shall charge each of the parties hereto with their respective proportionate shares upon the expense basis . . ." (Operating Agreement, Exhibit 2, at 5.)

8. Subsection 3 repeats the same requirement in PSA to keep the Wells free from liens and encumbrances. Specifically:

> Operator shall pay, or cause to be paid, as and when they become due and payable, all accounts of contractors and suppliers and wages and salaries for

---

[3] The Eric Stratton Operating Agreement dated November 12, 2014 and Dagny Taggart Operating Agreement dated December 11, 2014 are identical to the Greg Marmalard Operating Agreement March 20, 2015 in all material respects. The Eric Stratton Operating Agreement and Dagny Taggart Operating Agreement are attached hereto as Exhibit 3 and Exhibit 4, respectively.

services rendered or performed, and for materials supplied on, to or in respect of the Contract Area or any operations for the joint account thereof, and ***shall keep the Contract Area free from liens and encumbrances resulting therefrom*** except for those resulting from a bona fide dispute as to services rendered or materials supplied.

(Operating Agreement, Exhibit 2, at 5.) (Emphasis added.)

9.      Subsection 4 provides:

***Operator shall hold for the account of the Non-Operators any funds of the Non-Operators advanced or paid to the Operator***, either for the conduct of operations hereunder or as a result of the sale of production from the Contract Area, and ***such funds shall remain the funds of the Non-Operators on whose account they are advanced or paid until used for their intended purpose*** or otherwise delivered to the Non-Operators or applied toward the payment of debts as provided in Article VII.B. . . .

(Operating Agreement, Exhibit 2, at 5.) (Emphasis added.)

10.      These sections resulted in a joint interest billing ("JIB") arrangement wherein KEC was to pay funds to Emerald Oil for its share of the Wells' operating expenses. Emerald Oil was to hold those funds in trust for the payment of operating expenses. To use the Trust Funds (defined below) for any unauthorized purpose and to allow mechanics liens to encumber the Wells are breaches of both the PSA and Operating Agreements.

**C.      Emerald's Default under the PSA and Operating Agreements**

11.      On October 2, 2015, pursuant to Section 8.1(d) of the PSA and the Operating Agreements, KEC paid to Emerald a total amount of $5,406,699.57 (the "Trust Funds") as part of the JIB arrangement. These Trust Funds were to be held by Emerald pursuant to Article V, Section D(4) of the Operating Agreements "until used for their intended purpose or otherwise delivered" back to KEC.

12.      Instead of paying the operating expenses, on October 5, 2015, Emerald forwarded the entirety of the Trust Funds to Wells Fargo to service its debt with Wells Fargo.

13. The payment to Wells Fargo was not an authorized use of the Trust Funds and was a breach of the Operating Agreements.

14. The Trust Funds should have gone to pay operating expenses and, as a result of Emerald's breach, vendors with outstanding amounts owed placed liens on the Wells.

15. The expenses which should have been paid with the Trust Funds, instead became mechanics liens on the properties, totaling $3,500,851.18.

16. KEC has also been advised of the existence of unfiled liens which may encumber the Wells at a later date. The accrual of liens – both currently existing and the unfiled future liens – on the wells is a breach of Article V, Section D(3) of the Operating Agreements.

17. Also, contrary to Emerald's representation in Section 7.12 of the PSA, upon information and belief, Mike Murray, one of Emerald's executives included on Schedule 1.1(a) of the PSA, knew that the delay rental for Federal Oil and Gas Lease NDM 94112 (on the Marmalard Well) had not been paid by April 30, 2015 as required. As a result, the lease terminated automatically on May 1, 2015.

18. While the lease is in the process of being reinstated (though at an increased, punitive royalty rate and only after incurring significant additional costs), KEC has had to write down the value of the Marmalard Well and related leases in the amount of $2.99 million ("Marmalard Write Down").

19. As a result of these breaches of the PSA and Operating Agreements, KEC has incurred $280,000 in attorneys' fees to date. The PSA and Operating Agreements provide for the recovery of attorneys' fees resulting from Emerald's breach. 3

**D.     Assumption and Assignment of KEC's Agreements**

20.     On March 22, 2016, the Debtors commenced these Bankruptcy cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

21.     On September 22, 2016, the Debtors filed the Notice of Proposed Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (the "Notice").  The Notice listed a proposed cure amount of $0 for the assumption of its agreements with KEC.  In a subsequent email, Debtor's counsel clarified that the $0 amount was a placeholder, and the actual proposed cure amount was a total of $2,782,054.43 (the "Proposed Cure Amount").

22.     According to Debtor's counsel, the Proposed Cure Amount is the amount required to cure the existing liens on the Wells.  This Proposed Cure Amount, however, does not take into account the Marmalard Write Down, future unfiled liens, recovery or credit of the full amount of the Trust Funds, or attorneys' fees incurred.  KEC therefore submits that it is owed not less than $11,076,416.77 (the "Amount Due") and the cure amount must account for the potential for future liens on the properties.

**Argument**

23.     Section 365(a) of the Bankruptcy Code allows a debtor to assume an executory contract subject to court approval.  *See* 11 U.S.C. § 365(a).  However, as a condition for assumption, the debtor is required to cure all defaults existing under the contract.  *Id.* at 365(b)(1)(A).  *Cf. In re Zenith Indus. Corp.*, 319 B.R. 810, 815 (Bankr. D. Del. 2005) ("In order for a debtor to assume and assign an executory contract under § 365, a debtor is required to cure all defaults (including pre-petition defaults).").

24.    KEC does not object to the assumption of the PSA or Operating Agreements (collectively, the "Contracts"), provided that the correct cure amount is paid as required by Section 365 of the Bankruptcy Code.  However, Debtor is seeking to assume and assign the Contracts and pay only the Proposed Cure Amount, which fails to cure the full amount owed to KEC as a result of Emerald's misuse of the Trust Funds and failure to keep the Wells free from liens and encumbrances, as required by the PSA and Operating Agreements.  Had the Trust Funds properly been applied to the operating expenses, there would have been sufficient funds to pay operating expenses and there would be no resulting liens or encumbrances on the Wells.  Instead, Emerald immediately breached the Operating Agreement after receiving the Trust Funds by forwarding the funds to Wells Fargo for debt servicing and failed to pay vendors and contractors as needed.

25.    KEC submits that the entire Amount Due must be paid to KEC as the correct cure amount for purposes of assuming the Contracts under section 365 of the Bankruptcy Code.

26.    KEC reserves all rights that it may have with respect to the Contracts, including, without limitation, all rights and remedies available to it thereunder.  KEC further reserves the right to supplement, modify, and/or amend this Objection in any way as and when it deems necessary or appropriate, including, without limitation, to assert other amounts owed with respect to the Contracts.

## Notice

27.    This Objection has been served automatically through the Court's ECF system and on the following parties at the addresses set forth in the Proposed Assumption Notice:  (i) counsel and co-counsel to the Debtors, (ii) propose co-counsel to the Creditors' Committee, (iii)

the Office of the United States Trustee; (iv) counsel to the Agent Under the Debtors' Prepetition Credit facility; and (v) counsel to the Stalking Horse Bidder.

WHEREFORE, KEC respectfully requests that this Court approve the Debtors' request to assume the Contracts only with the corrected cure amounts paid and grant such other relief as this Court deems appropriate.

Dated:  September 28, 2016                    **COLE SCHOTZ P.C.**

                                             */s/  Nicholas J. Brannick*
                                             Norman L. Pernick (No. 2290)
                                             Nicholas J. Brannick (No. 5721)
                                             COLE SCHOTZ P.C.
                                             500 Delaware Avenue, Suite 1410
                                             Wilmington, DE 19801
                                             Telephone:  302.652.3131
                                             Facsimile:  302.574.2106
                                             E-mail:  npernick@coleschotz.com
                                                          nbrannick@coleschotz.com

                                                -and-

                                             Michael J. Lichtenstein
                                             SHULMAN, ROGERS, GANDAL,
                                                PORDY & ECKER, P.A.
                                             12505 Park Potomac Avenue
                                             Potomac, MD 20854
                                             Telephone:  301.230.5200
                                             Facsimile:  301.230.2891
                                             MLichtenstein@shulmanrogers.com

                                             *Counsel to Koch Exploration Company, LLC*

8