**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EMERALD OIL, INC., *et al.*,[1] | ) | Case No. 16-10704 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. __** |

**ORDER (A) APPROVING THE ASSET PURCHASE AGREEMENT BETWEEN THE
DEBTORS AND THE PURCHASER, (B) FURTHER IMPLEMENTING THE SALE
OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL
LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (C) AUTHORIZING THE
ASSUMPTION AND ASSIGNMENT OF CONTRACTS, (D) MODIFYING CERTAIN
PROVISIONS OF THE FINAL DIP ORDER, (E) APPROVING THE DMS
SETTLEMENT, AND (F) GRANTING RELATED RELIEF**

Upon the motion (the "Sale Motion")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors"), for entry of an order (the "Sale Order"): (a) approving

that certain asset purchase agreement (as amended from time to time, the "Asset Purchase

Agreement"), a copy substantially in the form of which is attached hereto as **Exhibit 1**, dated as

of November 1, 2016, by and between the Debtors and New Emerald Energy, LLC

(the "Purchaser"), (b) authorizing and approving the sale (the "Sale") of the Assets free and clear

of liens, liabilities, claims, interests, and other encumbrances as set forth in the Asset Purchase

Agreement, (c) authorizing the Debtors to assume and assign the contracts set forth on **Exhibit 2**

attached hereto (the "Assigned Contracts") to the Purchaser as set forth in the Asset Purchase

Agreement, and (d) granting certain related relief; and this Court, in furtherance of the Motion,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Emerald Oil, Inc. (9000); Emerald DB, LLC (2933); Emerald NWB, LLC (7528); Emerald WB LLC (8929); and EOX Marketing, LLC (4887). The location of the Debtors' service address is: 200 Columbine Street, Suite 500, Denver, Colorado 80206.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion or the Asset Purchase Agreement (as defined herein), as applicable.

having entered an order on August 31, 2016 at [Docket No. 664] (the "Bidding Procedures Order") approving, among other things, the proposed Bidding Procedures appended to the Bidding Procedures Order, the notice of the Sale, and procedures for determining and fixing cure costs to be paid in respect of Assigned Contracts; and the Court having reviewed Exhibit 1 to the *Joint Notice of Filing of Global Settlement Term Sheet* on September 28, 2016 [Docket No. 754] (the "DMS Settlement"); and the Debtors having determined, after an extensive marketing process, that the Purchaser has submitted the highest and best bid for the Assets; and upon adequate and sufficient notice of the Sale Motion, the Bidding Procedures, the Asset Purchase Agreement, and all other related transactions contemplated thereunder and in this Sale Order having been given in the manner directed by the Court in the Bidding Procedures Order; and all interested parties having been afforded an opportunity to be heard with respect to the Sale Motion and all relief related thereto; and the Court having reviewed and considered (i) the Sale Motion and all relief related thereto and (ii) the objections thereto; and the Court having heard and considered statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Sale Motion at a hearing before the Court on October 28, 2016 (the "Sale Hearing"); and the Court having jurisdiction over this matter; and it appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and upon the record of the Sale Hearing and all other pleadings and proceedings in these chapter 11 cases, including the Sale Motion; and after due deliberation thereon; and good and sufficient cause appearing therefor,

KE 41357638

THE COURT HEREBY FINDS AND DETERMINES THAT:[3]

**Jurisdiction, Final Order, and Statutory Predicates**

A.     This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(l) and 1334(a).   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).   Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The predicates for the relief requested in the Sale Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007, and 9014.

C.     This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).   Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, waives any stay and expressly directs entry of judgment as set forth herein.

**Notice of the Sale, Auction, and Cure Costs**

D.     Actual written notice of the Sale Motion, and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, has been afforded to all known interested entities and parties, including, but not limited to the following entities and parties (the "Notice Parties"):   (i) the U.S. Trustee; (ii) counsel to the Official Committee of Unsecured Creditors (the "Committee"); (iii) co-counsel to the Committee; (iv) the administrative agent under the Debtors' prepetition credit facility; (v) counsel to the

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

KE 41357638

administrative agent under the Debtors' prepetition credit facility; (vi) the indenture trustee for the Debtors' 2.00% convertible senior notes due 2019; (vii) the agent under the Debtors' debtor-in-possession credit facility; (viii) counsel to the agent under the Debtors' debtor-in-possession credit facility; (ix) the United States Attorney's Office for the District of Delaware; (x) the Internal Revenue Service; (xi) the Environmental Protection Agency; (xii) the office of the attorneys general for the states in which the Debtors operate; (xiii) the Securities and Exchange Commission; (xiv) counsel to the Stalking Horse Bidder; (xv) all parties who have expressed a written interest in some or all of the Assets; (xvi) counterparties to contracts and leases being assumed or assigned under the Asset Purchase Agreement; (xvii) all known holders of liens, encumbrances, and other claims secured by the Assets; (xviii) all of the Debtors' other creditors; (xix) the United States Bureau of Land Management; and (xx) any party that has requested notice pursuant to Bankruptcy Rule 2002.

E. Actual written notice of the auction for the Sale of the Assets that was scheduled for September 29, 2016 (the "Auction"), the Sale Hearing, the Sale of the Assets, and a reasonable opportunity to object or be heard with respect thereto, has been afforded to all known interested entities and parties, including, but not limited to the following entities and parties: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to New Emerald Holdings, LLC; (iv) counterparties to the Assigned Contracts (the "Contract Counterparties"); (v) all parties who have expressed a written interest in some or all of the Assets; (vi) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (vii) the Internal Revenue Service; (viii) all applicable state and local taxing authorities; (ix) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (x) the Notice Parties.

KE 41357638

F.      The Debtors caused notice of the Auction, the Sale, and the Sale Hearing to be published in the *USA Today (National Edition), The Denver Post,* and *The DailyDAC,* as provided by the Bidding Procedures Order.

G.      Notice of the Auction, Sale Hearing, and Sale was timely, proper, and reasonably calculated to provide the Notice Parties and all other interested entities and parties with timely and proper notice of the Auction, the Sale, and the Sale Hearing.

H.      In accordance with the provisions of the Bidding Procedures Order, the Debtors have served upon the Contract Counterparties notice of: (i) the Assigned Contracts which the Debtors seek to assign to, for assumption by, the Purchaser on the Closing (as defined in the Asset Purchase Agreement) and (ii) the relevant Cure Costs (defined below).  The service of such notice was good, sufficient, and appropriate under the circumstances, and no further notice need be given in respect of establishing a Cure Cost for the Assigned Contracts.  Each of the Contract Counterparties has had or will have had an opportunity to object to the Cure Costs set forth in the notice and to the assumption and assignment to the Purchaser of the applicable Assigned Contract.

I.      As evidenced by the affidavits of service and affidavits of publication previously filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, the Sale Hearing, the Sale, and the transactions contemplated thereby, including without limitation, the assumption and assignment of the Assigned Contracts to the Purchaser, has been provided in accordance with the Bidding Procedures Order and sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9008.  The notices described herein were good, sufficient, and appropriate under the circumstances, and no other or

5

further notice of the Sale Motion, the Auction, the Sale Hearing, the Sale, or the assumption and assignment of the Assigned Contracts to the Purchaser is or shall be required.

J.      The disclosures made by the Debtors concerning the Sale Motion, the Asset Purchase Agreement, the Auction, the Sale Hearing, the Sale, and the assignment of the Assigned Contracts to, and assumption by, the Purchaser were good, complete, and adequate.

K.      A reasonable opportunity to object and be heard with respect to the Sale and the Sale Motion and the relief requested therein (including the assumption and assignment of Assigned Contracts to the Purchaser and any Cure Costs related thereto), has been afforded to all interested persons and entities, including the Notice Parties.

### Good Faith of Purchaser

L.      The Asset Purchase Agreement was negotiated, proposed, and entered into by the Debtors and the Purchaser without collusion, in good faith, and from arms'-length bargaining positions.

M.      Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code.  The Purchaser has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among the bidders.

N.      The Purchaser is purchasing the Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code.  The Purchaser has proceeded in good faith in all respects in connection with the Sale including, but not limited to: (i) agreeing to subject its bid to the competitive bidding process contemplated in the Bidding Procedures Order in good faith, (ii) complying with the provisions in the Bidding Procedures Order, (iii) neither inducing nor causing the chapter 11 filings by the Debtors; and (iv) disclosing all payments to be

KE 41357638

made by the Purchaser in connection with the Sale.  The Purchaser is therefore entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code.

O.    For the purposes of findings L through N, the Purchaser shall be deemed to include Cortland Capital Markets LLC, CL Energy Opportunity Fund, L.P., FT SOF IV Holdings, LLC, FT SOF V  AIV Holdings I, LLC, FT SOF VII AIV Holdings I, LLC, and each of their respective affiliates.

### Highest and Best Offer

P.    The Debtors conducted a sale process in accordance with, and have otherwise complied in all material respects with, the Bidding Procedures Order.  The sale process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets.  The Auction was duly noticed in a noncollusive, fair, and good faith manner, and a reasonable opportunity has been given to any party interested in making a higher and better offer for the Assets.

Q.    No party other than Stalking Horse Bidder and the Purchaser submitted a Qualified Bid in accordance with the Bidding Procedures.  The Stalking Horse Bidder indicated it would not participate in the Auction, and therefore, the Debtors duly designated the Purchaser's Qualified Bid (as set forth in the Asset Purchase Agreement) as the Successful Bid, and the Debtors properly cancelled the Auction in accordance with the Bidding Procedures and the Bidding Procedures Order.

R.    The Asset Purchase Agreement constitutes the highest and best offer for the Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination that the Asset Purchase Agreement constitutes the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtors' business judgment.

7

KE 41357638

S.      The Asset Purchase Agreement represents a fair and reasonable offer to purchase the Assets under the circumstances of these chapter 11 cases.  No other entity or group of entities has offered to purchase the Assets for greater overall value to the Debtors' estates than the Purchaser.

T.      Approval of the Sale Motion and the Asset Purchase Agreement and the consummation of the transactions contemplated thereby are in the best interests of the Debtors' chapter 11 estates, their creditors, and other parties in interest.

<b><u>No Fraudulent Transfer or Merger</u></b>

U.      The consideration provided by the Purchaser pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) is the highest or best offer for the Assets, and (iii) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.  No other person or entity or group of entities has offered to purchase the Assets for greater overall value to the Debtors' estates than the Purchaser.  Approval of the Sale Motion and the Asset Purchase Agreement and the consummation of the transactions contemplated thereby are in the best interests of the Debtors, their estates, creditors, and other parties in interest.

V.      The Purchaser is not a mere continuation of the Debtors or their estates and there is no continuity of enterprise between the Purchaser and the Debtors.  The Purchaser is not holding itself out to the public as a continuation of the Debtors.  The Purchaser is not a successor to the Debtors or their estates and the Sale does not amount to a consolidation, merger, or de facto merger of Purchaser and the Debtors.

KE 41357638

**Validity of Transfer**

W.    Each Debtor has, to the extent necessary or applicable, (i) full corporate power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby, (ii) all corporate authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement, and (iii) taken all corporate or limited liability company action necessary to authorize and approve the Asset Purchase Agreement and the consummation of the transactions contemplated thereby.  The Sale has been duly and validly authorized by all necessary corporate action.  No consents or approvals, other than those expressly provided for in the Asset Purchase Agreement or this Sale Order, are required for the Debtors to consummate the Sale, the Asset Purchase Agreement, or the transactions contemplated thereby.

X.    The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors as such terms are provided for under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.  Neither the Debtors nor the Purchaser is entering into the transactions contemplated by the Asset Purchase Agreement fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

Y.    The Debtors are the sole and lawful owners of the Assets.  Subject to section 363(f) of the Bankruptcy Code, the transfer of each of the Assets to the Purchaser will be, as of the Closing, a legal, valid, and effective transfer of the Assets, which transfer vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Assets free and clear of (i) all liens and encumbrances relating to, accruing, or arising any time prior to the Closing (collectively, the "Liens") and (ii) all debts arising under, relating to, or in connection with any act of the Debtors or claims (as that term is defined in section 101(5) of the Bankruptcy Code),

9

KE 41357638

liabilities, obligations, demands, guaranties, options in favor of third parties, rights, contractual commitments, restrictions, interests and the terms and provisions thereof, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity or otherwise (including, without limitation, rights with respect to Claims (as defined below) and Liens (a) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtors' or the Purchaser's interests in the Assets, or any similar rights, or (b) in respect of taxes, restrictions, preferential purchase rights, rights of first refusal, consent rights or requirements, charges of interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income or other exercise of any attributes of ownership) (collectively, as defined in this clause (ii), "Claims"), relating to, accruing or arising any time prior to the Closing, in each case (*i.e.*, under both (i) and (ii) of the preceding), with the exception of Permitted Encumbrances and Assumed Liabilities that are expressly assumed by Purchaser under the Asset Purchase Agreement, including, for the avoidance of doubt, Cure Costs or any obligations arising at or after Closing arising under the Assigned Contracts.

### Section 363(f) is Satisfied

Z.     The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell the Assets free and clear of any interest in the property other than the Permitted Encumbrances and Assumed Liabilities.

AA.    The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby if the sale of the Assets to the Purchaser and the assumption of any Assumed Liabilities by the Purchaser were not free and

10

KE 41357638

clear of all Liens and Claims, other than Permitted Encumbrances and the Assumed Liabilities, or if the Purchaser would, or in the future could, be liable for any of such Liens and Claims (other than Permitted Encumbrances and the Assumed Liabilities).  Unless otherwise expressly included in Permitted Encumbrances or Assumed Liabilities, the Purchaser shall not be responsible for any Liens or Claims, including in respect of the following:  (i) any labor or employment agreements, (ii) all mortgages, deeds of trust and security interests, (iii) intercompany loans and receivables among the Debtors, (iv) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of any Debtor, and (v) any other employee, workers' compensation, occupational disease, or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors, (m) Claims or Liens arising under any Environmental Law (as defined in the Asset Purchase Agreement) with respect to the Business, Excluded Liabilities, the Assets, Excluded Assets, or assets owned or operated by Debtors or any corporate predecessor at any time prior to the Closing, (n) any bulk sales or

11

similar law, (o) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and (p) any theories of successor liability.

BB.    The Debtors may sell the Assets free and clear of all Liens and Claims against the Debtors, their estates or any of the Assets (except the Permitted Encumbrances and Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Liens or Claims against the Debtors, their estates, or any of the Assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  All other holders of Liens or Claims (except to the extent that such Liens or Claims are Assumed Liabilities or Permitted Encumbrances) are adequately protected by having their Liens or Claims, if any, in each instance against the Debtors, their estates, or any of the Assets, attach to the cash proceeds of the Sale ultimately attributable to the Assets in which such creditor alleges a Lien or Claims, in the same order of priority, and with the same validity, force, and effect, that such Liens or Claims had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.  Notwithstanding the foregoing, the rights of Slawson Exploration Company, Inc. ("Slawson") are reserved to the limited extent expressly set forth in paragraphs 60 and 61 below.

CC.    For the avoidance of doubt, Cortland Capital Market Services, LLC, as Agent (the "Agent") on behalf of certain lenders holding 100 percent of the debt under the Debtors' prepetition and postpetition credit facilities (the "Lenders"), and the Lenders expressly reserve (a) their right to request further adequate protection, and (b) all of their claims, interests, liens, rights and remedies against, in, and to the proceeds from the sale of the Assets and all other assets of the Debtors' estates; *provided* that the Lenders' Liens and claims in and to the cash

12

portion of the Purchase Price and cash and cash equivalents held by the Debtors as of the Closing shall be expressly subordinated to (i) properly perfected liens that are senior to the Lenders' Liens, (ii) allowed fees of professionals retained by the Debtors' estates and the Committee paid pursuant to this Sale Order or out of the Professional Reserve Account or the Intrepid Reserve Account, (iii) valid and allowed administrative expenses, (iv) the $2,000,000 set aside for payment to DMS (as defined below) at Closing in connection with the DMS Settlement (v) all amounts held in escrow, paid, and required to be paid pursuant to the Court's *Interim Order Regarding Dakota Midstream Parties' Motion to Compel Payment for Post-Petition Services Pursuant to 11 U.S.C. §§ 503(b) and 105(a)* [Docket No. 596], (vi) the escrowed Crude Sale Proceeds totaling $844,712.99 escrowed pursuant to the *Order Directing Turnover of Stored Crude Oil, Subject to the Provision of Adequate Protection for the Dakota Midstream Parties* [Docket No. 564], and (vii) the sum of $2,000,000 set aside for the exclusive benefit of unsecured creditors (which, for the avoidance of doubt, shall not include any deficiency claims of the Lenders).

DD.    In consideration of, among other things, the Cash Purchase Price (as defined herein), which includes, among other things, (i) payment of professional fees, (ii) funding of the DMS Settlement, and (iii) funding of the unsecured creditor pool, the Debtors' estates waive any and all claims of any nature against the Lenders and their affiliates, the Stalking Horse Bidder, and Cortland.

## Cure/Adequate Protection

EE.    The assumption and assignment of the Assigned Contracts pursuant to the terms of this Sale Order is integral to the Asset Purchase Agreement and is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest, and represents the

13

reasonable exercise of sound and prudent business judgment by the Debtors.  Subject to Section 7.5 of the Asset Purchase Agreement, the Purchaser shall:  (i) to the extent necessary, cure or provide adequate assurance of cure, any default existing prior to the date hereof with respect to the Assigned Contracts up to the applicable Cure Cost, within the meaning of 11 U.S.C. §§ 365(b)(1)(A) and 365(f)(2)(A), and (ii) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the Closing with respect to the Assigned Contracts up to the applicable Cure Cost, within the meaning of 11 U.S.C. § 365(b)(1)(B) and 365(f)(2)(A).  The Purchaser's promise to pay the Cure Costs and to perform the obligations under the Assigned Contracts after the Closing shall constitute adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B).

FF.    Any objections to the assumption and assignment of any of the Assigned Contracts to the Purchaser are hereby overruled or withdrawn.  Any objections to the Cure Costs are hereby overruled or withdrawn.  To the extent that any counterparty failed to timely object to its Cure Cost or the assumption and assignment of its Assigned Contract to the Purchaser, such counterparty is deemed to have consented to such Cure Cost and the assignments of its respective Assigned Contracts to the Purchaser pursuant to the Sale.

### Compelling Circumstances for an Immediate Sale

GG.    Good and sufficient reasons for approval of the Asset Purchase Agreement and the Sale have been articulated.  The relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest.  The Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justifications for approving the Asset Purchase Agreement and (ii) compelling circumstances for the Sale outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and

14

outside of, a chapter 11 plan, in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtors' estates and the Sale will provide the means for the Debtors to maximize distributions to creditors.

HH.    To maximize the value of the Assets and preserve the viability of the business to which the Assets relate, it is essential that the Sale of the Assets occur within the time constraints set forth in the Asset Purchase Agreement.  Time is of the essence in consummating the Sale.

II.    Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the Purchase Price under the Asset Purchase Agreement, the proposed Sale of the Assets to Purchaser constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

JJ.    The Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.  The Sale neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating chapter 11 plan for the Debtors.

KK.    The consummation of the Sale and the assumption and assignment of the Assigned Contracts is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

### General Provisions

1.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these chapter

15

KE 41357638

11 cases pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2.	The relief requested in the Sale Motion and the transactions contemplated thereby and by the Asset Purchase Agreement are approved as set forth in this Sale Order and on the record of the Sale Hearing, which is incorporated herein as if set forth fully in this Sale Order, and the Sale contemplated thereby is approved.

3.	All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled by announcement to the Court during the Sale Hearing or by stipulation filed with the Court, including any and all reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits with prejudice. Those parties who did not object or withdrew their objections to the Sale Motion are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.

4.	This Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order are incorporated herein by reference.

## Approval of the Asset Purchase Agreement

5.	The Asset Purchase Agreement and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

6.	Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized, empowered, and directed to use their reasonable best efforts to take any and all actions necessary or appropriate to (a) consummate the Sale pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, (b) close the Sale as contemplated in the Asset Purchase Agreement and this Sale Order, and (c) execute and deliver, perform under, consummate, implement, and fully close the transactions contemplated by the Asset Purchase

KE 41357638

Agreement, including assignment to, and  assumption by, the Purchaser of the Assigned

Contracts and Assigned Leases and Interests (in each case as such terms are defined in the Asset

Purchase Agreement), together with all additional instruments and documents that may be

reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale.  The

Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362

of the Bankruptcy Code to enforce any of its remedies under the Asset Purchase Agreement or

any other Sale related document.  The automatic stay imposed by section 362 of the Bankruptcy

Code is modified solely to the extent necessary to implement the preceding sentence and the

other provisions of this Sale Order.

7.      This Sale Order shall be binding in all respects upon the Debtors, their estates, all

creditors of, and holders of equity interests in, any Debtor, any holders of Liens, Claims, or other

interests (whether known or unknown) in, against or on all or any portion of the Assets, all

Contract Counterparties, the Purchaser and all successors and assigns of the Purchaser, the

Assets, and any trustees, if any, subsequently appointed in any of the Debtors' chapter 11 cases

or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases.

This Sale Order and the Asset Purchase Agreement shall inure to the benefit of the Debtors, their

estates and creditors, the Purchaser, and the respective successors and assigns of each of the

foregoing.

8.      From and after the Closing, the Purchaser shall indemnify, defend, and save the

Debtors and their respective officers, directors, employees, agents, and representatives forever

harmless from and against, any and all losses, damages, or other liabilities with respect to the

17

Breakup Fee or the Expense Reimbursement (each as defined in the Stalking Horse Purchase Agreement[4]), and any claims with respect thereto.

### Transfer of the Assets

9. Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtors are authorized and directed to use reasonable best efforts to transfer the Assets to the Purchaser on the Closing and such transfer shall constitute a legal, valid, binding, and effective transfer of such Assets and shall vest Purchaser with title to the Assets and, upon the Debtors' receipt of the Purchase Price, other than Permitted Encumbrances and Assumed Liabilities, shall be free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever, including but not limited to, (a) successor or successor-in-interest liability in respect of such Liens, Claims, or other interests and (b) Claims in respect of the Excluded Liabilities, with all such Liens, Claims, or other interests to attach to the cash proceeds ultimately attributable to the property against or in which such Liens, Claims, or other interests are asserted, subject to the terms thereof, with the same validity, force, and effect, and in the same order of priority, that such Liens, Claims, or other interests now have against the Assets, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto. Upon the Closing, the Purchaser shall take title to and possession of the Assets subject only to the Permitted Encumbrances and Assumed Liabilities; *provided* that the Closing shall not occur and no such transfers shall be made unless, prior to the Closing, the Purchaser provides cash (which is part of the Purchase Price), which in the aggregate provides $16 million (the "Cash Purchase Price") in funds to the Debtors to consummate a chapter 11 plan of liquidation and the closing of these Chapter 11 Cases.

---

[4]     *See* Bidding Procedures Order.

18

10.     For the avoidance of doubt, the Agent and the Lenders expressly reserve (a) their right to request further adequate protection, and (b) all of their claims, interests, liens, rights and remedies against, in, and to the proceeds from the sale of the Assets and all other assets of the Debtors estates, provided, that, the Lenders' Liens and claims in and to the cash portion of the Purchase Price and cash and cash equivalents held by the Debtors as of the Closing shall be expressly subordinated to (i) properly perfected liens that are senior to the Lenders' Liens, (ii) allowed fees of professionals retained by the Debtors' estates and the Committee paid pursuant to this Sale Order or out of the Professional Reserve Account or the Intrepid Reserve Account, (iii) valid and allowed administrative expenses, (iv) the $2,000,000 set aside for payment to DMS at Closing in connection with the DMS Settlement, (v) all amounts held in escrow, paid and required to be paid pursuant to the Court's *Interim Order Regarding Dakota Midstream Parties' Motion to Compel Payment for Post-Petition Services Pursuant to 11 U.S.C. §§ 503(b) and 105(a)* [Docket No. 596], (vi) the escrowed Crude Sale Proceeds totaling $844,712.99 escrowed pursuant to the *Order Directing Turnover of Stored Crude Oil, Subject to the Provision of Adequate Protection for the Dakota Midstream Parties* [Docket No. 564], and (vii) the sum of $2,000,000 set aside for the exclusive benefit of unsecured creditors (which, for the avoidance of doubt, shall not include any deficiency claims of the Lenders).  The Debtors shall consult with the Lenders on an ongoing basis with respect to all settlements and dispositions of liens, administrative expenses, the liquidating plan, and the wind down of the Debtors' business.

11.     All persons and entities that are in possession of some or all of the Assets on the Closing are directed to surrender possession of such Assets to the Purchaser or its assignee at the Closing.  On the Closing, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens,

19

Claims, or other interests in the Assets, if any (except to the extent such Liens, Claims, or interests constitute Permitted Encumbrances), as such Liens, Claims or interests may have been recorded or may otherwise exist.

12.    In consideration for the Purchaser's payment of the cash portion of the Purchase Price, and the limited subordination of its Liens and claims as provided in paragraph 10 above, the Lenders' commitments under the Financing Order (as defined in the Asset Purchase Agreement) shall terminate and the Financing Order shall be deemed amended to terminate any and all obligations of the Agent and the Lenders under the Carve Out (as such term is defined in the Financing Order).

13.    On the Closing, the Purchaser shall fund, or cause its affiliates to fund, $5,903,948.20 (which amount shall be a portion of the Cash Purchase Price) into a trust account (the "Professional Reserve Account") maintained by Pachulski Stang Ziehl & Jones, LLP ("PSZJ"), identified to the Purchaser in writing prior to the Closing. Upon the filing of a certificate of no objection with the Bankruptcy Court, PSZJ may pay fees and costs pursuant to the Interim Compensation Order.[5] For the avoidance of doubt, (a) funds in the Professional Reserve Account shall only be used to pay the Allowed Professional Fees of Professional Persons whenever allowed (as such terms are defined in the Financing Order), except for any Allowed Professional Fees of Intrepid (as defined herein), which shall be paid pursuant to paragraph 58 herein, and (b) the funding of the Professional Reserve Account shall not be construed as a limitation on any Professional Person's right to seek payment of fees or expenses from the Debtors; *provided* that, only after payment of all Allowed Professional Fees, any

---

[5]    *See Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and (II) Granting Related Relief* [Docket No. 311] (the "Interim Compensation Order").

KE 41357638

residual amounts in the Professional Reserve Account shall be transferred to the Debtors' estates and shall constitute the Lenders' Collateral (as defined in the Financing Order).

14.     A portion of the Cash Purchase Price aggregating $2,728,279 (the "Lender Fee Escrow") shall be segregated by the Debtors and made available to pay the expenses of the professionals retained by the Stalking Horse Buyer and Cortland, all further obligations of the Debtors under the Financing Order to reimburse the Agent for its out of pocket professional fees and expenses shall terminate.  Any remaining unused portion of the Lender Fee Escrow shall constitute the Lenders' Collateral (as defined in the Financing Order) and shall be paid to the Agent for application against the Lenders' remaining claims.  For the avoidance of doubt, the Debtors' requirement to pay any other Lenders' Costs (as defined in the Financing Order) pursuant to the Financing Order shall terminate upon entry of this Sale Order.

15.     The Debtors are hereby authorized and directed to use reasonable best efforts to take any and all actions necessary to consummate the Asset Purchase Agreement, including any actions that otherwise would require further approval by shareholders, members, or its board of directors, as the case may be, without the need of obtaining such approvals.

16.     The transfer of the Assets to the Purchaser pursuant to the Sale does not require any consents other than as specifically provided for in the Asset Purchase Agreement, which consents shall be deemed given; *provided* that the forgoing shall not apply to the DOI or any Federal Leases (as such terms are defined below).  On the Closing, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Sellers' interests in the Assets.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and

21

KE 41357638

instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

17.     A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder of any state, county, or local authority, and shall act to (i) cancel or evidence satisfaction of any of the Liens, Claims, and other encumbrances of record except those assumed as Assumed Liabilities or Permitted Encumbrances and (ii) evidence the Assumed Liabilities and Permitted Encumbrances.  For the avoidance of doubt, filing this Sale Order shall not act to cancel any Assumed Liabilities or Permitted Encumbrances.

18.     If any person or entity that has filed statements or other documents or agreements evidencing Claims or Liens on, or interests in, all or any portion of the Assets (other than statements or documents with respect to Permitted Encumbrances) shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Claims, Liens, or interests which the person or entity has or may assert with respect to all or any portion of the Assets, the Debtors are hereby authorized and directed, and the Purchaser is hereby authorized, on behalf of the Debtors and the Debtors' creditors, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Assets; *provided* that the provisions of this Sale Order authorizing the transfer of the Assets free and clear of all Liens, Claims, and Interests (except only Permitted Encumbrances and Assumed Liabilities) shall be self-executing, and the Debtors, the Purchaser, and creditors shall not be required to execute or file releases, termination statements, assignments, consents, or other

22

instruments in order for the provisions of this Sale Order to be effectuated, consummated and/or implemented.

19.     Upon the Closing, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtors' interests in the Assets and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Assets to the Purchaser.  This Sale Order is and shall be effective as a determination that, upon the Closing, all Liens, Claims, Interests, or other interest of any kind or nature whatsoever existing as to the Assets prior to the Closing, other than Permitted Encumbrances and Assumed Liabilities, or as otherwise provided in this Sale Order, shall have been unconditionally released, discharged, satisfied, and terminated, and that the conveyances described herein have been effected.

20.     This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

21.     Subject to the terms, conditions, and provisions of this Sale Order, all persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely

23

KE 41357638

affect or interfere with the ability of the Debtors to sell and transfer the Assets to the Purchaser in accordance with the terms of this Asset Purchase Agreement and this Sale Order.

22.     To the greatest extent available under applicable law, and except as provided in the Asset Purchase Agreement or this Sale Order, the Purchaser shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Purchaser as of the Closing.

23.     Nothing in this Sale Order or the Asset Purchase Agreement modifies or waives the applicability of section 525(a) of the Bankruptcy Code.

24.     Nothing in this Sale Order or the Asset Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any police power by, or any regulatory liability to, any governmental unit under any applicable Environmental Law[6] on the part of any entity as the owner or operator of property after the Closing.

25.     Notwithstanding any provision in the Motion, this Sale Order, or the Federal Sale Documents (as defined below), any assignment and/or transfer of any interests in contracts, leases, covenants, operating rights agreements, rights-of-use and easements, and rights–of-way or other interests or agreements:  (a) with the federal government; (b) involving (i) federal land or minerals or (ii) lands or minerals held in trust for federally-recognized Indian tribes or Indian individuals (collectively, "Indian landowners"); or (iii) lands or minerals held by such Indian

---

[6]     As used in this Sale Order, "Environmental Law" means all federal, state and local statutes, regulations, ordinances and similar provisions having the force or effect of law, all judicial and administrative orders, agreements and determinations and all common law concerning pollution or protection of the environment or environmental impacts on human health and safety, including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act; the Clean Water Act; the Clean Air Act; the Emergency Planning and Community Right to Know Act; the Federal Insecticide, Fungicide, and Rodenticide Act; the Resource Conservation and Recovery Act; the Safe Drinking Water Act; the Surface Mining Control and Reclamation Act; the Toxic Substances Control Act; and any state or local equivalents.

landowners in fee with federal restriction on alienation (collectively, the "Federal Leases") will be ineffective as to those interests described in the preceding (a) through (c), absent the consent of the United States and any applicable Indian landowner. The Debtors and the Purchaser agree to comply with all applicable bankruptcy and non-bankruptcy law with respect to the Federal Leases, and nothing in any implementing auction or sale documents relating to the Federal Leases (the "Federal Sale Documents") shall otherwise affect any decommissioning obligations and financial assurance requirements under the Federal Leases as determined by the United States and any applicable Indian landowner (as provided for under applicable law and the Federal Leases) that must be met by the Debtors or the Purchaser.

26.     Nothing in the Federal Sale Documents shall be interpreted to require the United States and any applicable Indian landowner to novate, approve, or otherwise consent to the assignment and/or transfer of any interests in the Federal Leases.  For the avoidance of doubt, in order to obtain the consent of the United States and any applicable Indian landowner, all existing defaults under the Federal Leases, including any outstanding rents or royalties known to date plus interest, must be assumed and cured.  The United States Department of Interior ("DOI") will retain and have the right to audit and/or perform any compliance review, and if appropriate, collect from the Debtors and/or the Purchaser any additional monies owed by the Debtors prior to the transfer or assignment of the Federal Leases without those rights being adversely affected by these bankruptcy proceedings.

27.     The Debtors and the Purchaser, if it is able (or if the Debtors are able, on its behalf) to obtain consent and an interest in the Federal Leases, will retain all defenses and/or rights, other than defenses and/or rights arising from the filing of these chapter 11 cases, to challenge any determinations relating to the Federal Leases; *provided* that any such challenge,

25

including any challenge associated with this bankruptcy proceeding, must be raised in the United States' administrative review process leading to a final agency determination by the DOI. The audit and/or compliance review period shall remain open for the full statute of limitations period established by the Federal Oil and Gas Royalty Simplification and Fairness Act of 1996 (30 U.S.C. § 1701, *et seq.*) to the extent applicable to the Federal Leases under non-bankruptcy law. Nothing in the Federal Sale Documents or this Sale Order shall affect the United States' police and regulatory powers, and the United States' rights to offset or recoup any amounts due under, or relating to, any Federal Leases (if any) are expressly preserved.

## **Assumption and Assignment of Contracts**.

28.    Except as provided in this Sale Order, the Debtors are hereby authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to Purchaser, effective upon the Closing of the Sale, the Assigned Contracts free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever (other than the Permitted Encumbrances and Assumed Liabilities), and (b) execute and deliver to Purchaser such documents or other instruments as Purchaser reasonably deems may be necessary to assign and transfer the Assigned Contracts, Permitted Encumbrances, and Assumed Liabilities to Purchaser. Further, any leases that are subject to section 365(d)(4) of the Bankruptcy Code and are Assigned Contracts shall be deemed to be assumed by the Debtors as of the date of this Sale Order and the Debtors are authorized to assign such leases to the Purchaser effective upon the Closing of the Sale.

29.    On the Closing, the Debtors shall assign to the Purchaser, and the Purchaser shall assume, those certain severance agreements, dated as of July 26, 2016, between Emerald Oil, Inc. and McAndrew Rudisill, Ryan Smith, James Muchmore, Brittany Rothe, and Ian Myers

26

(collectively, the "Severance Agreements").  For the avoidance of doubt, the Sale shall constitute a "Restructuring" as defined in the Severance Agreements, and the Severance Agreements will be binding upon the Purchaser.

30.    Except as provided in this Sale Order, with respect to the Assigned Contracts: (a) the Debtors may assume each of the Assigned Contracts in accordance with section 365 of the Bankruptcy Code, (b) the Debtors may assign each Assigned Contract in accordance with sections 363 and 365 of the Bankruptcy Code (and, in the case of the DMS Agreements, as amended pursuant to the DMS Settlement, with the express consent of DMS in accordance with the assignment provisions of the DMS Agreements) (as such terms are hereinafter defined), and any provisions in any Assigned Contract (other than a DMS Agreement) that prohibit or condition the assignment of such Assigned Contract  or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract to Purchaser, constitute unenforceable anti-assignment provisions which are void and of no force and effect, (c) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to Purchaser of each Assigned Contract have been satisfied, (d) the Assigned Contracts shall be transferred and assigned to, assumed by, and following the closing of the Sale remain in full force and effect for the benefit of, Purchaser, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, requires consent to or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assignment to and assumption by Purchaser, and (e) upon the

27

KE 41357638

Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assigned Contract.

31.     Unless otherwise agreed and stated on the record at the Sale Hearing, the respective amounts set forth under the "Cure Cost" column on **Exhibit 2** attached hereto (and with respect to the DMS Agreements, the additional amounts set forth in paragraphs 50 through 56 below) reflect the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults and pay all pecuniary losses under the Assigned Contracts (collectively, the "Cure Costs"), and no other amounts are or shall be due in connection with the assumption by the Debtors and the assignment to the Purchaser of the Assigned Contracts.

32.     All defaults or other obligations of the Debtors under the Assigned Contracts arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Purchaser at the Closing or as soon thereafter as practicable by payment of the Cure Costs.

33.     Except for a Contract Counterparty who files or has filed a timely objection to the Cure Cost on or before September 30, 2016 at 10:00 a.m. (prevailing Eastern Time) (whose objection shall be resolved in accordance with the procedures set forth in the Bidding Procedures Order) (a "Contract Objection"), all Contract Counterparties are deemed to have consented to their respective Cure Cost.

34.     Except for a Contract Counterparty who files or has filed a timely Contract Objection to the Debtors' proposed assignment of such Assigned Contract to the Purchaser (whose objection shall be resolved in accordance with the procedures set forth in the Bidding Procedures Order), all Contract Counterparties are deemed to have consented to assumption by

28

KE 41357638

the Debtors and assignment to the Purchaser of their respective Assigned Contracts, and the Purchaser shall be deemed to have demonstrated adequate assurance of future performance with respect to such Assigned Contract pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

35.     Any timely-filed Contract Objections shall be resolved in accordance with the procedures set forth in the Bidding Procedures Order.  The provisions of this Sale Order shall be effective and binding upon Contract Counterparties to the extent set forth in, and in accordance with, such procedures.  Nothing in this Sale Order, the Sale Motion, or in any notice or any other document is or shall be deemed an admission by the Debtors that any contract or Contract is an executory contract or unexpired lease or must be assumed and assigned pursuant to the Asset Purchase Agreement or in order to consummate the Sale.

36.     Upon the Debtors' assignment of the Assigned Contracts to, and assumption by, the Purchaser pursuant to the Asset Purchase Agreement under the provisions of this Sale Order and any additional orders of this Court and Purchaser's payment of any Cure Costs pursuant to the terms hereof, no default shall exist under any Assigned Contract, and no counterparty to any Assigned Contract shall be permitted (a) to declare a default by the Purchaser under such Assigned Contract or (b) otherwise take action against the Purchaser as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assigned Contract.  Except insofar as a Contract Counterparty has filed or may timely file and prosecute a Contract Objection as provided by the Bidding Procedures Order, each non-Debtor party to an Assigned Contract hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Purchaser, or the property of any of them, any default or Claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior

29

to or existing as of the Closing, or, against Purchaser, any counterclaim, defense, setoff, or any other Claim asserted or assertable against the Debtors and (ii) imposing or charging against Purchaser or its affiliates any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assignments to Purchaser of the Assigned Contracts. The validity of such assumption and assignments of the Assigned Contracts shall not be affected by any dispute between the Debtors and any non-Debtor party to an Assigned Contract relating to such Assigned Contract's respective Cure Cost.

37.    Except as provided in the Asset Purchase Agreement or this Sale Order, after the Closing, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities and all holders of such Claims are forever barred and estopped from asserting such Claims against the Debtors, their successors or assigns, their property or their assets or estates.

38.    The failure of the Debtors, the Purchaser, or any Contract Counterparty to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Purchaser's rights, or the Contract Counterparty's rights, to enforce every term and condition of the Assigned Contracts.

39.    With respect to any Contract which is not purchased on the Closing and provided such Contract has not been rejected by Debtors after the Closing pursuant to section 365 of the Bankruptcy Code, upon written notice(s) from the Purchaser to the Debtors given at any time after the Closing, the Debtors are hereby authorized to take all actions reasonably necessary to assume and assign to the Purchaser pursuant to section 365 of the Bankruptcy Code any such Contract(s) as set forth in such notice(s); *provided* that any Cure Cost, or any defaults that may arise after entry of this the Sale Order with respect to such Contract, applicable thereto shall be

KE 41357638

satisfied solely by the Purchaser without any deduct, credit or setoff of the Purchase Price except as otherwise set forth in the Asset Purchase Agreement.  Notwithstanding anything in this Sale Order to the contrary, on the date any such Contract is assumed and assigned to Purchaser such Contract shall thereafter be deemed a purchased Asset for all purposes under this Sale Order and the Asset Purchase Agreement.  The Debtors shall file a supplemental notice with respect to any future Contract(s) which become Assigned Contacts pursuant to this paragraph.

40.     All Contract Counterparties to the Assigned Contracts shall be deemed to have consented to such assumption and assignment under section 365(c)(l)(B) of the Bankruptcy Code and the Purchaser shall enjoy all of the Debtors' rights, benefits and privileges under each such Assigned Contract as of the applicable date of assumption and assignment without the necessity to obtain any non-Debtor parties' written consent to the assumption or assignment thereof.

41.     Nothing in this Sale Order, the Motion, or in any notice or any other document is or shall be deemed an admission by the Debtors that any Assigned Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code.

42.     The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of its respective rights to enforce every term and condition of the Assigned Contracts.

43.     Upon the Closing, the Purchase and Sale Agreement, dated July 31, 2015, and related joint operating agreements (collectively, the "Koch Agreements"), entered into between certain of the Debtors and Koch Exploration Company, LLC ("Koch") shall be deemed assumed and assigned to the Purchaser in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code, and the only cure shall be:  (a) the Debtors (following payment of the Cash Purchase Price) agree to take all actions necessary to remove and release any and all liens related

31

to the Koch Agreements that have been asserted against or upon the Debtors, Koch, or any of the wells, leasehold interests, facilities, equipment, hydrocarbons, or other assets related to the Koch Agreements in which the Debtors or Koch hold an interest; (b) the Debtors waive their right to assert all claims against Koch on account of outstanding joint interest billings due to the Debtors pursuant to the Koch Agreements; and (c) Koch waives and releases any and all claims asserted or assertable against the Debtors pursuant to the Koch Agreements.

## Reinstatement of Terminated Leases

44.     The terminated DOI leases, NDM 94704, NDM 94705, NDM 94706 and NDM 94112 (collectively, the "Terminated Leases"), are not Assigned Contracts being assigned to the Purchaser by this Sale Order.  The Debtors are authorized to continue to seek reinstatement of the Terminated Leases pursuant to applicable federal regulations and law (the "Reinstatement") and, if the Reinstatement is granted, are ordered to seek to transfer the reinstated Terminated Leases to the Purchaser subject to the terms of this Sale Order, the Asset Purchase Agreement, and applicable non-bankruptcy law and regulations.

45.     The Debtors shall, in consultation with the Purchaser, use commercially reasonable efforts to complete the Reinstatement, assume the Terminated Leases, and assign the Terminated Leases to the Purchaser subject to the terms of this Sale Order, the Asset Purchase Agreement, and applicable non-bankruptcy law and regulations for no additional consideration. Notwithstanding any provision in the Asset Purchase Agreement, the Debtors remain responsible for all operating obligations and all liabilities associated with the Terminated Leases and related wells (Clark Griswold Federal 3-17-20H, Noonan Federal 3-18-19H, and Greg Marmalard Federal 3-28-33H, collectively, the "DOI Wells"), including but not limited to, DOI's current requirement to temporarily abandon the DOI Wells, during the Reinstatement process; *provided*

32

that nothing in this Sale Order shall prevent a third party (including Purchaser) from performing any of the obligations or liabilities associated with the Terminated Leases.

46.     In the event the Reinstatement is not granted or the Terminated Leases are not successfully assigned to, and assumed by, the Purchaser, the Debtors shall fulfill all decommissioning obligations with respect to the DOI Wells pursuant to applicable federal law. The Debtors or the Purchaser, on behalf of the Debtors, shall establish a bond pursuant to 43 C.F.R 3104.1 in favor of the DOI by the Sale Closing to fulfill all decommissioning obligations related to the DOI Wells, which bond shall be in the amount of $450,000 (the "Decommissioning Costs"); *provided* that nothing in this Sale Order shall prevent a third party (including Purchaser) from performing any of the decommissioning obligations or paying any liability related thereto. If the Reinstatement is granted, the reinstated Terminated Leases, as amended, shall be subject to the DMS Agreements as and to the extent they would be as if such leases were never terminated, whether or not they remain interests of the Debtors or are successfully assigned to, and assumed by, the Purchaser.

**Prohibition of Actions Against the Purchaser**

47.     Except for the Cure Costs, Permitted Encumbrances, and Assumed Liabilities, or as otherwise expressly provided for in this Sale Order or the Asset Purchase Agreement, the Purchaser shall not have any liability or other obligation of the Debtors arising under or related to any of the Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Asset Purchase Agreement, the Purchaser shall not be liable for any Claims against the Debtors or any of their predecessors or affiliates, and  the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor, or transferee liability, labor law, *de facto* merger, mere continuation, or substantial continuity, whether known or

33

unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, intercompany loans, and receivables among the Debtors, Environmental Liabilities, and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Assets prior to the Closing.

48.     Except with respect to Permitted Encumbrances and Assumed Liabilities, or as otherwise permitted by the Asset Purchase Agreement or this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Liens, Claims, or other interests of any kind or nature whatsoever against or in all or any portion of the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Assets, the operation of the Debtors' Business prior to the Closing, or the transfer of the Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser, any of the foregoing's affiliates, successors, or assigns, their property or the Assets, such persons' or entities' Liens, Claims, or interests in and to the Assets, including, without limitation, the following actions:  (a) commencing or continuing in any manner any action or other proceeding against the Purchaser, its Affiliates, its successors, assets or properties, (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser, its Affiliates, its successors, assets or properties, (c) creating, perfecting, or enforcing any Lien or other Claim against the Purchaser, its Affiliates, its successors, assets, or properties,

34

(d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Purchaser, its Affiliates or its successors, (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof, or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Assets or conduct any of the businesses operated with the Assets.  Upon the Closing, each creditor is authorized and directed, and the Purchaser is hereby authorized, on behalf of each of the Debtors' creditors, to execute such documents and take all other actions as may be necessary to release Liens, Claims, and other interests in or on the Assets (except Permitted Encumbrances and Assumed Liabilities or as otherwise provided in this Sale Order), if any, as provided for herein, as such Liens, Claims, and other interests may have been recorded or may otherwise exist.

49.     The Purchaser has given substantial consideration under the Asset Purchase Agreement for the benefit of the Debtors, their estates, and their creditors.  The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Claims and Liens pursuant to this Sale Order, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens against or interests in, or Claims against any of the Debtors or any of the Assets, other than holders of Liens or Claims relating to the Permitted Encumbrances or Assumed Liabilities.  The consideration provided by the Purchaser for the Assets under the Asset Purchase Agreement is fair and reasonable and, accordingly, the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

50.     Unless otherwise set forth in this Sale Order, notwithstanding any provision in the Asset Purchase Agreement to the contrary, nothing therein or in this Sale Order shall be deemed

35

to impair valid outstanding liabilities of any affiliate of the Debtors whose equity is being sold to the Purchaser.

**Approval of the DMS Settlement**

51.     The DMS Settlement is approved, and the Debtors are authorized to take any and all actions necessary to consummate the DMS Settlement in accordance with this Sale Order.

52.     Upon the Closing, and as conditions precedent thereto (which conditions, for the avoidance of doubt, may be waived only by DMS): (i) the Debtors shall pay at Closing to Dakota Midstream, LLC, Dakota Energy Connection, LLC, and Dakota Fluids, LLC f/k/a Mesa Oil Services, LLC (collectively, "DMS") a one-time cash payment in the amount of $2 million; (ii) the Debtors shall have paid (A) into escrow all amounts required to be paid pursuant to the Court's *Interim Order Regarding Dakota Midstream Parties' Motion to Compel Payment for Post-Petition Services Pursuant to 11 U.S.C. §§ 503(b) and 105(a)* [Docket No. 596] and, at Closing, paid to DMS all amounts payable pursuant to the Court's *Agreed Order Regarding Distribution of MVC Escrow* and (B) to DMS for all other amounts due and payable for services rendered under the DMS Agreements; and (iii) at Closing, the Debtors shall have paid to DMS all amounts payable pursuant to the Court's *Agreed Order Regarding Distribution of Crude Sale Proceeds*; and (iv) DMS shall be issued five percent of the equity in New Emerald Energy Holdings, LLC as set forth in the Limited Liability Company Operating Agreement of New Emerald Energy Holdings, LLC, in substantially the form attached hereto as **Exhibit 3**.

53.     To the extent not paid by the Purchaser, the Debtors shall pay in full, as an expense of administration pursuant to 11 U.S.C. § 503(b), amounts that come due prior to the Closing under the DMS Agreements in the ordinary course.

54.     DMS shall receive an allowed general unsecured claim in the amount of $10 million against each of the Debtors' estates (the "Unsecured Dakota Claim").

36

55. After the Closing, the Debtors shall cause the adversary proceeding styled *Emerald Oil, Inc., et al., v. Dakota Midstream, LLC, et al.,* Adv. Pro. No. 16-50998 (KG) (the "Adversary Proceeding") to be dismissed and shall withdraw the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Reject Certain Executory Contracts with the Dakota Midstream Parties and (II) Granting Related Relief* [Docket No. 362] (the "Rejection Motion").

56. Upon the Closing, the DMS Agreements (as defined in the Rejection Motion), shall be assumed by the Debtors and assigned to (and assumed by, as amended pursuant to the terms of the DMS Settlement) the Purchaser with all rights and interests of DMS pursuant to the DMS Agreements surviving entry of this Sale Order, as Cure Costs, Assumed Liabilities, and Permitted Encumbrances, as applicable. For the avoidance of doubt, fees for services rendered under the DMS Agreements (including, for the avoidance of doubt, any minimum volume commitment shortfall amounts) prior to the Closing shall be billed at the rates under the applicable DMS Agreements at the rates for such services in effect immediately prior to the amendment of the DMS Agreements.

57. The Debtors on behalf of their estates and anyone claiming by or through the Debtors, agree to waive any and all claims against DMS, its directors, employees, partners, and investors arising under or related to the Adversary Proceeding, the Rejection Motion, or the DMS Agreements during the period prior to the Closing (including, without limitation, claims relating to the Stored Crude (as defined in Docket No. 564)). The Agent and each of the Lenders, agree to waive any and all claims against DMS, its directors, employees, partners, and investors arising under or related to the Adversary Proceeding, the Rejection Motion, or the DMS Agreements during the period prior to the Closing (including, without limitation, claims relating to the Stored Crude). DMS agrees to waive any and all claims against the Debtors, the

37

Agent, and each of the Lenders and each of their directors, employees, partners, and investors arising under or related to the DMS Agreements during the period prior to the Closing (including, without limitation, claims relating to the Stored Crude); *provided* that such waiver shall not affect any claims arising under, or in connection with the enforcement of, this Sale Order.

### Approval of the Intrepid Settlement

58.    Pursuant to the Fee Structure (as defined in the Order (I) Authorizing the Employment and Retention of Intrepid Partners LLC as Financial Advisor for the Debtors and Debtors in Possession, Effective Nunc Pro Tunc to the Petition Date and Waiving Certain Information Requirements Imposed by Local Rule 2016-2 and (II) Granting Related Relief [Docket No. 235] (the "Intrepid Retention Order")) described in that certain Engagement Letter dated as of March 17, 2016 (the "Engagement Letter"), between Intrepid Partners, LLC ("Intrepid") and Emerald Oil, Inc., as modified by the Intrepid Retention Order, Intrepid will be entitled to payment of a Sale Transaction Fee[7] in the amount of $3,315,000 (of which $401,500 was earned and payable upon the execution of a definitive agreement with respect to the Sale, and which has been paid to Intrepid or is being maintained by the Debtors in escrow for payment to Intrepid), earned and payable in full upon the closing of the sale of substantially all of the assets of the Debtors to the Purchaser, for the Purchase Price of $110,500,000. Pursuant to a settlement with the Company and the Purchaser (the "Intrepid Settlement"), Intrepid has agreed to reduce the Sale Transaction Fee to $2,411,500 (the "Adjusted Sale Fee") with the back-end portion of the Adjusted Sale Fee to be $2,010,000 (the "Adjusted Back-End Sale Fee"), subject to each of the below terms:

---

[7]    Capitalized terms used in this paragraph 58 but not otherwise defined herein shall have the meanings ascribed to them in the Engagement Letter.

KE 41357638

i.   the Debtors shall pay to Intrepid an amount equal to 80 percent of the Adjusted Back-End Sale Fee (i.e., $1,608,000) in cash contemporaneously with the closing of the Sale;

ii.  the Debtors shall deposit into a segregated escrow account maintained by PSZJ (the "Intrepid Reserve Account") an amount equal to 20 percent of the Adjusted Back-End Sale Fee (i.e., $402,000), which such escrowed amount shall be released to Intrepid upon approval by the Bankruptcy Court of Intrepid's final fee application;

iii. the Debtors shall pay to Intrepid the $498,010.45 of fees and expenses earned pursuant to the Engagement Letter and the Retention Order, but which have not yet been paid to Intrepid, in cash contemporaneously with the closing of the Sale;

iv.  the Debtors shall pay or reimburse Intrepid for all of Intrepid's unpaid documented costs and expenses (including, without limitation, fees and disbursements of Simpson Thacher & Bartlett LLP, outside counsel to Intrepid) in an amount not to exceed $85,000, in cash contemporaneously with the closing of the Sale;

v.   Intrepid shall file a final fee application in respect of all fees and expenses paid to Intrepid during the pendency of the chapter 11 cases in accordance with the procedures set forth in any applicable orders of the Bankruptcy Court, in each case consistent with the above-described terms; *provided* that nothing contained herein shall prejudice or otherwise affect the U.S. Trustee's review rights as described in the Intrepid Retention Order; and

vi.  each of the Debtors and the Purchaser agrees to support and to not object or contest (or support any party in objecting to or contesting), Intrepid's final fee application, including without limitation, the payment to Intrepid of the Adjusted Back-End Sale Fee.

59.    The Intrepid Settlement is hereby approved, and the Debtors are authorized and directed to take any and all actions necessary to consummate the Intrepid Settlement in accordance with this Sale Order.

## Resolution of Various Objections

60.    Slawson has asserted in its objection to the Sale (the "Slawson Objection") that under applicable bankruptcy and non-bankruptcy law, the Debtors are unable to transfer the Assets to the Purchaser free and clear of certain obligations that could arise in the event Purchaser conducted drilling operations on certain leases located in McKenzie and Williams

39

Counties, North Dakota (such leases, as defined in the Slawson Objection, the "Project X Leases").

61.    The Debtors and Purchaser disagree with such assertion, and pursuant to this Sale Order, Purchaser is acquiring the Assets (as defined in the Asset Purchase Agreement) free and clear of the Slawson interests to the fullest extent of the law. In order to resolve the Slawson Objection, Slawson and the Purchaser shall agree to a mutually agreed briefing schedule to conduct a hearing before the Bankruptcy Court on the Slawson Objection. If it is determined by final order of this Court that the Project X Leases could not be assigned free and clear of the Slawson interests, then the Purchaser shall assume the obligations to Slawson as set forth in the Slawson objection.

62.    Notwithstanding any provision in the Asset Purchase Agreement and this Sale Order to the contrary, the Debtors shall, at Closing, be deemed to have transferred ownership of certain equipment to Cache Trucking LLC ("Cache"), free and clear of all liens claims, encumbrances, and shall pay the cash amount of the cure amount to Cache as listed in **Exhibit 2**, at Closing.

63.    For the avoidance of doubt, the Debtors' obligations to make any payments or remove any liens pursuant to paragraphs 43 and 62 of this Sale Order shall not be construed as obligations of the Lenders as part of any Cure Cost.

### Other Provisions

64.    For the avoidance of doubt, only those Assets being transferred to the Purchaser pursuant to the Asset Purchase Agreement and any ancillary agreements contemplated thereby are being transferred free and clear of Liens, Claims, interests, and other encumbrances (except for Permitted Encumbrances and Assigned Contracts) pursuant to the terms of this Sale Order,

40

KE 41357638

and any and all other assets of the Debtors that the Purchaser is not acquiring shall remain subject to all valid pre-existing Liens, Claims, interests and other encumbrances.  Any releases, terminations, termination statements, assignments, consents, or other instruments relating to Liens or other encumbrances in or on the Assets shall properly be limited to the Assets being transferred to, and Assumed Liabilities being assumed by, Purchaser.

65.    The consideration provided by the Purchaser to the Debtors pursuant to the Asset Purchase Agreement for the Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and under the laws of the United States, any state, territory, possession or the District of Columbia.

66.    The transactions contemplated by the Asset Purchase Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and such Sale are duly stayed pending such appeal.  The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

67.    Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these chapter 11 cases, (b) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order.

KE 41357638

68.     For cause shown, pursuant to Bankruptcy Rules 6004(h) and 7062(g), this Sale Order shall not be stayed, shall be effective immediately upon entry, and the Debtors and Purchaser are authorized to close the Sale immediately upon entry of this Sale Order.

69.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

70.     The failure to specifically include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety; *provided* that this Sale Order shall govern if there is any inconsistency between the Asset Purchase Agreement (including all ancillary documents executed in connection therewith) and this Sale Order.  Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.

71.     The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates or lower the amount of cash proceeds paid; *provided* that prior notice shall be provided to the Agent, the Committee, and DMS with respect to any modification, amendment, or supplement, and the Agent and the Committee shall have the opportunity to object to any material modification, amendment, or supplement that has a material adverse effect on the Debtors' estates.

72.     The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Asset Purchase Agreement, all

42

amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which any Debtor is a party or which has been assigned by the Debtors to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to the Purchaser, (b) interpret, implement, and enforce the provisions of this Sale Order; (c) protect Purchaser against any Liens, Claims, or other interest in or against the Sellers or the Assets of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (d) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Assigned Contracts; *provided* that, for the avoidance of doubt, the Court's jurisdiction shall not continue with respect to any regulatory actions or administrative proceedings related to any Federal Leases between the Debtors or the Purchaser and its assigns, on one hand, and DOI on the other.

73.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

74.    Nothing in this Sale Order or the Asset Purchase Agreement (a) releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Sale Order or (b) authorizes the transfer or assignment to Purchaser of any license, permit, registration, authorization, or approval of, or the discontinuation of any obligation thereunder, or with respect to a governmental unit without Purchaser's complying with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

KE 41357638

75.     To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Sale Motion in these chapter 11 cases, the terms of this Sale Order shall govern.

76.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Sale Order.

Dated: _____, 2016
Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

44

KE 41357638