# EXHIBIT A

IMPAC 5961873v.1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | Chapter 11 |
| **PATRIOT NATIONAL, INC.,** *et al.,*[1] | Case No. 18-10189 (KG) |
| **Debtors.** | (Jointly Administered) |
| | **Re: Docket No. 978** |

**ORDER GRANTING FIRST INTERIM AND FINAL APPLICATION OF HUGHES HUBBARD & REED LLP FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES AS ATTORNEYS FOR THE DEBTORS FOR THE PERIOD JANUARY 31, 2018 THROUGH JULY 2, 2018**

Upon consideration of the first interim and final fee application (the "Final Fee Application")[2] (D.I. 978) of Hughes Hubbard & Reed LLP ("Hughes Hubbard"), attorneys to the debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases, for final compensation and reimbursement of expenses pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for the period of January 31, 2018 through July 2, 2018 (the "Final Fee Period"); and the Court having reviewed the Final Fee Application, the Objection of Cerberus Business Finance, LLC and Carrier & Technology Solutions, LLC (collectively, the "Objectors") to the Final Fee Application (the "Objection") (D.I. 1001) and the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Patriot National, Inc. (1376), Patriot Services, LLC (1695); TriGen Insurance Solutions, Inc. (2501); Patriot Captive Management, LLC (2341); Patriot Underwriters, Inc. (0045); TriGen Hospitality Group, Inc. (6557); Patriot Risk Consultants, LLC (0844); Patriot Audit Services, LLC (5793); Patriot Claim Services, Inc. (9147); Patriot Risk Services, Inc. (7189); Corporate Claims Management, Inc. (6760); CWIBenefits, Inc. (0204); Forza Lien, LLC (7153); Contego Investigative Services, Inc. (0330); Contego Services Group, LLC (0012); Patriot Care Management, LLC (2808); Radar Post-Closing Holding Company, Inc. (2049); Patriot Technology Solutions, LLC (6855); and Decision UR, LLC (1826). The Debtors' headquarters are located at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Final Fee Application.

response filed by Hughes Hubbard to the Objection; and the Court having conducted a hearing on October 1, 2018; and the parties having advised the Court that Hughes Hubbard and the Objectors had reached a resolution of the Objection to the Final Fee Application; and the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, (ii) this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b), (iii) venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409, (iv) notice of the Final Fee Application was appropriate under the circumstances, (v) the Objection has been withdrawn with prejudice, and (vi) Hughes Hubbard and the Objectors have agreed to the final compensation for reasonable and necessary professional services described below; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT

1.    The Final Fee Application is granted on a final basis as provided herein.

2.    Final compensation is hereby allowed and approved for professional services rendered by Hughes Hubbard on behalf of the Debtors in the Chapter 11 Cases in the sum of $4,122,957.30 as compensation for reasonable and necessary professional services rendered and the sum of $93,182.54 for reimbursement of actual and necessary costs and expenses incurred, for a total of $4,216,139.84 for the Final Fee Period.

3.    The Debtors are authorized and directed to pay Hughes Hubbard $3,546,727.84, constituting the sum of the above amounts less $669,412.00 previously paid in connection with monthly fee applications.

4.    Carrier & Technology Solutions, LLC and the PNI Litigation Trust, as applicable, are authorized to make all payments in the amounts and at the times set forth in the Settlement Agreement attached hereto as Exhibit 1.

5.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

6.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2018

_____
The Honorable Kevin Gross
United States Bankruptcy Judge

# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Settlement Agreement") is made as of this 11th day of October 2018 and is entered into by and among: (i) Cerberus Business Finance, LLC ("Cerberus"); (ii) Carrier & Technology Solutions, LLC (f/k/a Patriot Services, LLC) ("CTS"); (iii) Peter Kravitz, in his capacity as Plan Administrator (as defined in the Plan) and as trustee of the PNI Litigation Trust (the "Trust"); and (iv) Hughes Hubbard & Reed LLP ("Hughes Hubbard") (each of Cerberus, CTS, the Plan Administrator, the Trust, and Hughes Hubbard, a "Party" and, together, the "Parties").

WHEREAS, on January 30, 2018 (the "Petition Date"), Patriot National, Inc. and certain of its affiliates (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, which cases are jointly administered and pending before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (Case No. 18-10189 (KG)) (the "Chapter 11 Cases");

WHEREAS, on February 27, 2018, the Court authorized the Debtors to retain Hughes Hubbard as their attorneys in the Chapter 11 Cases;

WHEREAS, on May 4, 2018, the Bankruptcy Court entered an Order (the "Confirmation Order") approving the Debtors' Fourth Further Amended Joint Chapter 11 Plan of Reorganization (the "Plan");

WHEREAS, the Effective Date of the Plan (as defined therein) occurred on July 2, 2018;

WHEREAS, upon the Effective Date, the Trust was created and was assigned certain causes of action pursuant to the Plan, and the Plan Administrator was assigned certain duties under the Plan;

WHEREAS, on August 16, 2018, Hughes Hubbard filed the *First Interim and Final*

*Application of Hughes Hubbard & Reed LLP for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Attorneys for the Debtors for the Period from January 31, 2018 Through July 2, 2018* (the "Fee Application"), pursuant to which Hughes Hubbard sought allowance of fees in the amount of $4,850,538.00 and reimbursement of expenses in the amount of $93,182.54;

WHEREAS, on September 6, 2018, Cerberus and CTS filed an objection to the Fee Application (the "Objection");

WHEREAS, on September 10, 2018, Hughes Hubbard filed a response to the Objection;

WHEREAS, pursuant to the Plan, Confirmation Order, and Litigation Trust Agreement (as defined in the Plan), as applicable, Peter Kravitz is the duly appointed and acting Plan Administrator and trustee of the Trust, and, as successor to the Debtors under 11 U.S.C. § 1123, has the authority pursue, litigate, or settle claims asserted against the Debtors;

WHEREAS, in order to avoid the costs and uncertainties of litigation, the Parties, without admitting any fault or liability whatsoever to one another, desire to settle this matter amicably, have participated in good faith settlement negotiations, and have reached a settlement, the terms of which they now have set forth in this Settlement Agreement.

NOW, THEREFORE, in consideration of the promises aforesaid and the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby stipulate and agree as follows:

1.    Recitals Incorporated. The recitals and prefatory phrases and paragraphs set forth above are true, accurate, and correct, and are incorporated in full and made a part of this Settlement Agreement.

2.    Settlement Payment.  In full and final satisfaction of all claims and demands of

Hughes Hubbard for compensation for services rendered to the Debtors or Reorganized Debtors, as applicable, in, or in connection with, the Chapter 11 Cases (including services performed prior to the Petition Date, during the Chapter 11 Cases, or after the occurrence of the Effective Date, in each case for which payment has not previously been received by Hughes Hubbard), CTS or the Trust, as applicable, shall pay Hughes Hubbard the following amounts (the sum of the following being referred to as the "Settlement Amount"):

a.  On account of fees requested in the Fee Application, CTS shall pay to Hughes Hubbard the sum of $4,122,957.30 *less* $669,412.00 previously paid to Hughes Hubbard as interim compensation, for a net amount due of $3,453,545.30;

b.  On account of expenses requested in the Fee Application, CTS shall pay to Hughes Hubbard the sum of $93,182.54;

c.  On account of certain fees and expenses incurred in connection with services rendered to or for the benefit of CTS from and after the Effective Date, CTS shall pay to Hughes Hubbard the sum of $50,729.38; and

d.  On account of certain fees and expenses incurred in connection with services rendered to or for the benefit of the Trust from and after the Effective Date, the Trust shall pay to Hughes Hubbard the sum of $61,245.48.

3.      The payments contemplated by paragraph 2 above shall be due and payable no later than seven (7) calendar days after the date on which the order approving the Fee Application becomes final and is no longer subject to appeal.  Payment of the Settlement Amount shall be tendered by wire transfer of immediately available funds pursuant to the following instructions:



4.    <u>Access to Funds.</u>  Each of CTS and the Trust represents that it possesses or has access to funds sufficient to timely pay its share of the Settlement Amount to Hughes Hubbard in accordance with the terms of this Settlement Agreement.

5.    <u>Notice of Withdrawal.</u>  Cerberus and CTS shall file a notice of withdrawal of the Objection with the Court no later than two (2) business days after the submission to the Bankruptcy Court of the form of order approving the Fee Application.

6.    <u>Bankruptcy Court Approval.</u>  This Settlement Agreement shall only become effective upon the entry by the Bankruptcy Court of an order authorizing the payment of fees and expenses to Hughes Hubbard pursuant to the Fee Application in the amounts contemplated by paragraph 2(a) and 2(b) above.

7.    <u>Attorneys' Fees and Costs.</u>  Each Party shall bear its own attorneys' fees and costs incurred in regard to all matters arising out of or relating to this Settlement Agreement, the Fee Application, and the Objection.

8.    <u>Cooperation; Further Services.</u>

a.  Upon receipt of the payments contemplated by paragraph 2, above, Hughes Hubbard (at its sole cost and expense) will provide to counsel for CTS invoices for services it rendered in connection with Hughes Hubbard's representation of the Debtors between November 29, 2017 and January 30, 2018, including (without limitation) its time records for each attorney rendering such services and reasonable detail supporting all expenses for which reimbursement has been sought.  Such

invoices shall be divided by project, where applicable, and by particular litigation or proceeding, where applicable. In addition, Hughes Hubbard shall provide to counsel for CTS reasonably detailed time records and reasonably detailed invoices for all services rendered by Hughes Hubbard and all expenses incurred by Hughes Hubbard in connection with the representation of Contego Services, LLC and/or Ms. Toni Gott in the action entitled *Baca v. Contego Services, LLC, et al.* (the "Baca Litigation"), as well as reasonable access to other information in Hughes Hubbard's possession with respect to the Baca Litigation that is requested by CTS; provided that Hughes Hubbard will not be required to act as attorneys of record or render any legal services in the Baca Litigation unless otherwise agreed in writing by Hughes Hubbard.

b. Hughes Hubbard (at its sole cost and expense) shall further reasonably cooperate with CTS and the Trust with respect to the turnover of all client files and related materials arising from or relating to Hughes Hubbard's representation of Patriot National, Inc. or any of its affiliates.

c. Hughes Hubbard shall not perform any further services for or on behalf of CTS or the Trust except upon the prior written request of CTS or the Trust, as applicable.

9.    Mutual Releases.

a. Effective upon the execution of this Settlement Agreement and confirmation of receipt and bank clearance of the Settlement Amount, Hughes Hubbard (on behalf of itself and its parent, subsidiaries, affiliates, successors, assigns, officers, directors, employees, agents, attorneys, managers, advisors, partners and members; collectively the "HHR Releasors") forever remises, releases,

acquits, satisfies, and forever discharges each of Cerberus, CTS, the Plan Administrator and the Trust, and their respective parents, subsidiaries, affiliates, successors, assigns, officers, directors, employees, agents, attorneys, managers, advisors and members (collectively, the "Cerberus/CTS/Trust Releasees") of and from all manner of actions, causes of action, avoidance actions, suits, debts, covenants, contracts, controversies, agreements, promises, claims, counterclaims and demands whatsoever, which the HHR Releasors ever had or now have against any of the Cerberus/CTS/Trust Releasees, or which any personal representative, successor, heir or assign of any HHR Releasor hereafter can, shall or may have, by reason of any matter, cause or thing whatsoever, whether asserted or unasserted, known or unknown, suspected or unsuspected, contingent or non-contingent, from the beginning of time to the date of this Settlement Agreement, in each case relating to any matter arising out of or relating to the Fee Application, the Objection, and any services rendered to the Debtors or Reorganized Debtors by Hughes Hubbard at any time from the beginning of time through and including the Post-Effective Date Period (collectively, "HHR Claims"); and agree not to file or cause to be filed any legal action against any Cerberus/CTS/Trust Releasee relating to or arising from HHR Claims.  This paragraph shall not operate or be construed to operate as a release or discharge of any of Hughes Hubbard's obligations under this Settlement Agreement, and does not contemplate any third-party beneficiaries.

b.  Effective upon the execution of this Settlement Agreement and confirmation of receipt and bank clearance of the Settlement Amount, each of Cerberus, CTS, the Plan Administrator and the Trust (on behalf of themselves and

their respective parents, subsidiaries, affiliates, successors, assigns, officers, directors, employees, agents, attorneys, managers, advisors, partners and members; collectively the "Cerberus/CTS/Trust Releasors") forever remises, releases, acquits, satisfies, and forever discharges Hughes Hubbard, and its parent, subsidiaries, affiliates, successors, assigns, officers, directors, employees, agents, attorneys, managers, advisors, partners and members (collectively, the "HHR Releasees") of and from all manner of actions, causes of action, avoidance actions, suits, debts, covenants, contracts, controversies, agreements, promises, claims, counterclaims and demands whatsoever, which the Cerberus/CTS/Trust Releasors ever had or now have against any of the HHR Releasees, or which any personal representative, successor, heir or assign of any Cerberus/CTS/Trust Releasor hereafter can, shall or may have, by reason of any matter, cause or thing whatsoever, whether asserted or unasserted, known or unknown, suspected or unsuspected, contingent or non-contingent, from the beginning of time to the date of this Settlement Agreement, in each case relating to any matter arising out of or relating to the Fee Application, the Objection, and any services rendered to the Debtors or Reorganized Debtors by Hughes Hubbard at any time from the beginning of time through and including the Post-Effective Date Period (collectively, "Cerberus/CTS/Trust Claims"); and agree not to file or cause to be filed any legal action against any HHR Releasee relating to or arising from Cerberus/CTS/Trust Claims.  This paragraph shall not operate or be construed to operate as a release or discharge of any of Cerberus', CTS's, the Plan Administrator's or the Trust's obligations under this Settlement Agreement, and does not contemplate any third-party beneficiaries.

WITH RESPECT TO ANY AND ALL HHR CLAIMS AND CERBERUS/CTS/TRUST CLAIMS, EACH OF THE PARTIES AGREES THAT IT EXPRESSLY WAIVES THE PROVISIONS, RIGHTS AND BENEFITS OF CALIFORNIA CIVIL CODE § 1542 AND ANY PROVISIONS, RIGHTS AND BENEFITS CONFERRED BY ANY LAW OF ANY STATE OR TERRITORY OF THE UNITED STATES OR PRINCIPLE OF COMMON LAW WHICH IS SIMILAR, COMPARABLE OR EQUIVALENT TO CALIFORNIA CIVIL CODE § 1542, WHICH PROVIDES:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

EACH OF THE PARTIES ACKNOWLEDGES THAT IT MAY HEREAFTER DISCOVER FACTS IN ADDITION TO OR DIFFERENT FROM THOSE THAT IT NOW KNOWS OR BELIEVES TO BE TRUE WITH RESPECT TO THE SUBJECT MATTER OF THE CLAIMS, BUT THE PARTIES SHALL EXPRESSLY HAVE FULLY, FINALLY AND FOREVER SETTLED, RELEASED AND DISCHARGED ANY AND ALL CLAIMS, KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, CONTINGENT OR NON-CONTINGENT, WHETHER OR NOT CONCEALED OR HIDDEN, WHICH NOW EXIST, OR HERETOFORE HAVE EXISTED UPON ANY THEORY OF LAW OR EQUITY NOW EXISTING OR COMING INTO EXISTENCE IN THE FUTURE, INCLUDING, BUT NOT LIMITED TO, CONDUCT WHICH IS NEGLIGENT, RECKLESS, INTENTIONAL, WITH OR WITHOUT MALICE, OR A BREACH OF ANY DUTY, LAW OR RULE, WITHOUT REGARD TO THE SUBSEQUENT DISCOVERY OR EXISTENCE OF SUCH DIFFERENT OR ADDITIONAL FACTS.

9

10.     Default.  In the event that a Party defaults hereunder and fails to cure said default as set forth below, the non-defaulting Party shall be entitled to an award of reasonable attorneys' fees and costs it incurs in connection with enforcing the terms of this Settlement Agreement.  Without limitation, an event of default shall occur if CTS or the Trust, as applicable, fails to timely make the payment of the Settlement Amount to Hughes Hubbard as set forth above (a "Payment Default"), in which case, Hughes Hubbard shall provide written notice (the "Written Notice") of the default to counsel for CTS, the Plan Administrator and the Trust by first-class postage-paid U.S. mail or by facsimile and/or e-mail if such information is available (all of which the Parties agree to be acceptable methods of properly giving notice under this Settlement Agreement).  The Written Notice shall provide five (5) business days from the date of such notice to cure the default.

11.     Notices. All notices to be sent or information to be provided under this Settlement Agreement shall be sent to the following:

    a.     Cerberus/CTS:

        Adam Harris, Esq.
        Schulte Roth & Zabel LLP
        919 Third Avenue
        New York, New York
        Tel: 212-756-2000
        Fax: 212-593-5955
        Email: adam.harris@srz.com

    b.     Plan Administrator/Trust:

        David M. Posner, Esq.
        Kilpatrick Townsend & Stockton LLP
        The Grace Building
        1114 Avenue of the Americas
        New York, New York 10036-7703
        Tel: 212-775-8700
        Fax: 212-775-8800
        Email: dposner@kilpatricktownsend.com

10

    c.     Hughes Hubbard:

> Terence Healy, Esq.
> Hughes Hubbard & Reed LLP
> One Battery Park Plaza
> New York, New York 10004-1482
> Tel: 212-837-6000
> Fax: 212-422-4726
> Email: terence.healy@hugheshubbard.com

12.    Binding Effect.  This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns, including, but not limited to, any successor Plan Administrator or trustee of the Trust.

13.    Entire Agreement.  This Settlement Agreement constitutes the entire agreement of the Parties hereto as to the subject matter hereof.  The undersigned acknowledge that there are no communications or oral understandings contrary, different, or that in any way restrict this Settlement Agreement, and that all prior agreements or understandings within the scope of the subject matter of this Settlement Agreement are, upon the execution and delivery of this Settlement Agreement, superseded, null and void.

14.    Amendments.  No waiver, modification or amendment of the terms of this Settlement Agreement shall be valid or binding unless made in writing, signed by the party to be charged and then only to the extent as set forth in such written waiver, modification, or amendment.

15.    Counterparts.  The Parties may execute this Settlement Agreement in whole or counterparts, and execution of counterparts shall have the same force and effect as if the parties had signed the same instrument. Signatures transmitted electronically or by facsimile shall have the same effect as original signatures.

16.    Choice of Law.  This Settlement Agreement shall be governed by, and

construed and enforced in accordance with, the laws of the State of New York, without regard to its conflict of law principles.

17.   Neutral Interpretation.   In the event any dispute arises among the Parties with regard to the interpretation of any term of this Settlement Agreement, all of the Parties shall be considered collectively to be the drafting party and any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall be inapplicable.

18.   Authority.   Each Party to this Settlement Agreement warrants and represents that the person signing this Settlement Agreement on his behalf is duly authorized to enter into this Settlement Agreement on behalf of such Party and that it is the sole owner of any Claims it is releasing hereunder. Each Party signing this Settlement Agreement separately acknowledges and represents that this representation and warranty is an essential and material provision of this Settlement Agreement and shall survive execution of this Settlement Agreement.

19.   Illegality.   If any clause, provision, or paragraph of this Settlement Agreement shall, for any reason, be held illegal, invalid, or unenforceable, such illegality, invalidity, or enforceability shall not affect any other clause, provision, or paragraph of this Settlement Agreement, and this Settlement Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable clause, paragraph, or other provision had not been contained herein, except if the release granted by any Party in this Settlement Agreement is deemed to be unenforceable, illegal, or invalid, then the releases granted by the other Parties herein shall be of no force and effect.

20.   Advice of Counsel.   Each of the Parties acknowledges that it has been represented by counsel of its choice in the negotiations leading up to the execution of this Settlement Agreement and that it has read this Settlement Agreement and has had the opportunity to

receive an explanation from legal counsel regarding the legal nature and effect of the same, and each Party has had it fully explained to it by its counsel and understands the terms and provisions of this Settlement Agreement and its nature and effect. Each Party further represents that it is entering into this Settlement Agreement freely and voluntarily, relying solely upon the advice of its own counsel, and not relying on the representation of any other Party or of counsel for any other Party.

21.     Acknowledgement. This Settlement Agreement was executed after arm's length negotiations among the Parties and their respective counsel, and reflects the conclusion of each of the Parties that this Settlement Agreement is in its best interest.

22.     Divisions and Headings. The divisions of this Settlement Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Settlement Agreement.

23.     Survival.  Each term, representation and warranty contained in this Settlement Agreement shall survive execution of this Settlement Agreement.

13

IN WITNESS HEREOF, the undersigned, being duly authorized, have caused this

Settlement Agreement to be executed as of the date shown above.

**CARRIER & TECHNOLOGY SOLUTIONS, LLC (F/K/A PATRIOT SERVICES, LLC)**

By: _____

Name: Geo F. Richardson

Title: General Counsel
EVP of Administration

**CERBERUS BUSINESS FINANCE, LLC**

By: _____

Name:

Title:

**PETER KRAVITZ, AS PLAN ADMINISTRATOR AND AS TRUSTEE OF THE PNI LITIGATION TRUST**

By: _____

Peter Kravitz

**HUGHES HUBBARD & REED LLP**

By: _____

Name: TERENCE HEALY

Title: PARTNER

13

IN WITNESS HEREOF, the undersigned, being duly authorized, have caused this

Settlement Agreement to be executed as of the date shown above.

CARRIER & TECHNOLOGY SOLUTIONS,
LLC (F/K/A PATRIOT SERVICES, LLC)

By: _____
    Name:
    Title:

CERBERUS BUSINESS FINANCE, LLC

By: _____
    Name: Joseph Naccarato
    Title: Chief Operating Officer

PETER KRAVITZ, AS PLAN
ADMINISTRATOR AND AS TRUSTEE OF
THE PNI LITIGATION TRUST

By: _____
    Peter Kravitz

HUGHES HUBBARD & REED LLP

By: _____
    Name: TERENCE HEALY
    Title: PARTNER